**MISSOURI, K. & T. R. CO. OF TEXAS v.
O'CONNOR. (No. 2053.)**

Court of Civil Appeals of Texas. El Paso. Oct.
6, 1927.

Rehearing Denied Oct. 27, 1927.

**1. Master and servant ⬅288(16½)—Whether
foreman assumed risk of section employee's
failure to exercise care to avoid collision of
motorcars held for jury (federal Employers'
Liability Act [45 USCA §§ 51–59]).**

In suit by section foreman, under the federal
Employers' Liability Act (45 USCA §§ 51–59 [U.
S. Comp. St. §§ 8657–8665]), for injuries result-
ing from collision of his gasoline motorcar with
another like car operated by another employee,
whether plaintiff assumed risk of failure of the
other employee to exercise due care to avoid col-
lision and injury *held* for jury.

**2. Appeal and error ⬅231(9)—General objec-
tion to portion of charge placing burden of
proof on defendant held insufficient (Rev. St.
1925, art. 2185).**

In personal injury action, where court
charged that burden of proof was on plaintiff to
establish by preponderance of evidence negli-
gence of defendant, and that burden of proof was
on defendant to prove by preponderance of evi-
dence contributory negligence of plaintiff, de-
fendant's objection to portion of the charge plac-
ing burden of proof on it was not a compliance
with Rev. St. 1925, art. 2185, and amounted to
no objection.

**3. Trial ⬅256(1)—If evidence called for quali-
fication of charge, court's attention should
have been called thereto.**

If evidence calls for qualification of a charge
as given by the court, court's attention should
be distinctly called thereto, and opportunity af-
forded for correction.

Appeal from District Court, Dallas Coun-
ty; T. A. Work, Judge.

Action by J. A. O'Connor against the
Missouri, Kansas & Texas Railroad Company
of Texas. From a judgment for plaintiff, de-
fendant appeals. Affirmed.

Chas. C. Huff and J. M. Chambers, both of
Dallas, for appellant.

Wm. Franklin Jones and S. P. Jones, both
of Marshall, and Raymond Buck, of Fort
Worth, for appellee.

HIGGINS, J. This is a suit by appellee to
recover damages for personal injuries sus-
tained by him while in appellant's employ-
ment as a section foreman, resulting from a
collision of a gasoline motorcar, under ap-
pellee's control and upon which he was riding
in the discharge of his duties, with another
such car operated by J. A. De Fratus, an-
other employee of appellant. The action is
governed by the federal Employers' Liabil-
ity Act (45 USCA §§ 51–59; U. S. Comp. St.
§§ 8657–8665).

The accident occurred on a curve in a cut,
the banks of which obstructed the view
ahead. The view was further obstructed by
some box cars upon a side track at that point.
According to the testimony of appellee, he was
seated on the floor of the left-hand corner of
the car upon which he was riding, maintain-
ing a sharp lookout ahead, his car traveling
north at about 8 miles per hour. The car
driven by De Fratus suddenly came in view
about 200 feet ahead, traveling about 25
miles an hour towards appellee. At the
time the latter car came in view De Fratus
was looking back over his shoulder and the
collision occurred before De Fratus was
aware of the presence of the car upon which
appellee was riding. De Fratus did not
slacken the speed of his car. As soon as the
latter car came in view the operator of the
car upon which appellee was riding applied
the brake and the car had almost stopped
when the collision occurred. De Fratus testi-
fied:

"I had cut off the gas before looking back, but
had not put on the brakes, and was just rolling
along down the hill, doing nothing to reduce my
speed, just coasting along about 15 miles per
hour when I heard his car. I was on the curve
when I looked back. The block showed every-
thing in the clear all the way in to Dallas. I
could not see the signal at the south end of the
curve in front of me and that caused me to look
back. Plaintiff was coming about 12 miles per
hour when we struck, which was about 200 yards
from signal No. 3. It is about one mile from
signal No. 3 to the next one south, which is
south of the curve and is known as No. 2. I was
not expecting to meet a motorcar at that place,
and did not flag around the curve. * * * "

Appellant's track had automatic block
signals which would show the presence of
a train in the block. At the time of the ac-
cident the block where the accident occurred
had no train in it, and the signal so showed.
Appellant's motorcars were insulated so they
would not operate the signals.

Three issues of negligence involving the
acts of De Fratus were submitted as follows:
(1) Whether he operated his motorcar at a
negligent rate of speed; (2) whether he
failed to use ordinary care to keep a look-
out; and (3) whether he failed to use ordi-
nary care to stop his car or to check the speed
thereof as the cars approached and collided.

These three questions were all answered in
the affirmative, and each was found by the
jury to be a proximate cause of the injury.
The jury also found against appellant's plea
of assumed risk and contributory negligence.
Judgment was rendered in favor of appellee
for the damages assessed, which was later
reduced by remittitur.

[1] Appellant asserts a peremptory charge
in its favor should have been given for two
reasons, as follows:

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

First. Because "the defendant owed plaintiff no duty to keep a lookout for his motorcar while moving over the main line track, or to exercise ordinary care to prevent it colliding with the motorcar operated by its employee De Fratus, there being no evidence that he discovered the presence of plaintiff's car on the track in time to avoid the collision, hence there was no negligence on the part of defendant proximately causing plaintiff's injury."

Second. Because the uncontroverted evidence shows "it was plaintiff's personal duty to protect his motorcar and himself from injury by a collision with other motorcars, and he assumed the risk of injury from such cause, and, being engaged in interstate commerce, the assumption of the risk is a bar to his right to recover herein."

Among the rules of appellant in force at the time of the accident governing the operation of motorcars were the following:

"(15) Run slow over switches, frogs, highway crossings, railroad crossings, curves, etc. Positions of switches and derails must be carefully observed on approaching them.

"(16) Approach public and private street or road crossings, persons on or near the track, pass cars on adjoining track, buildings and other places where view is obscured, prepared to stop before an accident can occur, should any persons or vehicles move onto the track. Do not assume that others see the motorcar, or that they will stop or get out of the way if they do see or hear the car. Live stock on or near the track must be driven away out of danger before car leaves that point.

"(17) Extreme care must be exercised moving over trestles or bridges, through cuts, high fills, etc. Where no places are provided for setting off cars, curves, and other places where view is obscured, sending a flagman ahead when necessary, to protect against train or other motor cars approaching, at the same time protecting against trains from the rear when necessary."

The evidence shows that neither of the motors were "flagged" by sending a flagman ahead as rule 17 said should be done when "necessary" to protect against trains or other motorcars on curves and other places where the view is obscured. De Fratus obviously could not do so, because he was the only person on the car he was operating. There is evidence that the rule as to "flagging" for motorcars had been habitually disregarded for years by all employees. The evidence upon this phase of the case is sufficient to raise the presumption that appellant was aware of such habitual disregard and thereby waived such rule. Appellee testified:

"During the 10 years I have been on this section, it has not been the practice to flag a motorcar for anything but trains. When we know there are no trains on the road or section, we do not flag. We never flag a motorcar for another motorcar. I never heard of that being done. They do not do it.

"If Mr. De Fratus had been going at the speed that my motorcar was going, I would have been able to stop my motorcar and get off before the collision; and even if he had been looking in that direction the accident would not have happened. If he had been looking out for obstructions or things on the track as he came through this cut and around this curve, he would have seen me about the time that I saw him; we would have seen each other. If he had seen me about that time, he could have stopped his car before colliding with me.

"I knew there was no train approaching from the north, because when a train gets within 3 miles of Dallas it throws the block at the Houston & Texas Central Railway crossing, which is north of the curve in question, and also puts all of the other signals at caution; that is, the arm drops halfway down to a horizontal position. * * * There was no occasion for me to flag around this curve. These rules applied to De Fratus and his motorcar same as to mine. If he had been looking ahead and had tried to stop his car as I did mine when he first came around where he could see my car, there would have been no collision.

"If you are going 8 miles an hour around a curve and another car is meeting you coming at the proper rate of speed, even 15 miles an hour, you would not have to remove your motorcar off of the track to keep that car from hitting you. We would both stop. I have met them many times in that same curve where this accident happened. We back up to where it is convenient to move the motorcar off of the track and get it back again. There was no reason for me sending a flagman ahead to look out for motorcars through this curve. * * * There is no rule or regulation by which I would expect a man to come around that curve on a motorcar at 25 miles per hour. That is an excessive speed for that curve. Going 8 miles per hour, I brought my car to nearly a stop in not over 20 feet. * * *"

It is evident that, if De Fratus had been maintaining a lookout ahead and running slow upon the curve as appellee was doing, the collision would not have occurred.

Appellant cites and relies upon Chesapeake & O. R. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, in support of its propositions that it owed appellee no duty to maintain a lookout for his motorcar and that appellee had assumed the duty of protecting himself from the peril of collision with other motorcars.

There are circumstances under which track workers assume the duty of protecting themselves from moving engines, trains, and cars upon the track, and the operators of such engines, trains, and cars have the right to assume that the workers will so protect themselves and such operators owe the workers no duty to maintain a lookout for them. The case cited is of that kind, but the doctrine thereof has no present application. The very rules upon which appellant relies, and common prudence as well, imposed upon the operators of the two cars the duty to exercise due care to avoid collision and injury to each other. Neither assumed the risk of a failure on the part of the other to exercise such care. The requested peremptory charge was properly refused.

[2] The court's charge upon the burden of proof reads:

"The burden of proof is upon the plaintiff to establish by a preponderance of the evidence the negligence, if any, of the defendant.

"The burden of proof is upon the defendant to prove by a preponderance of the evidence contributory negligence, if any, of the plaintiff."

Appellant filed this objection thereto:

"The defendant objects to that portion of the charge of the court placing the burden of proof upon the defendant."

Appellant's third and last proposition reads:

"The issue of contributory negligence being made by the testimony of plaintiff, in admitting that he failed to obey the rule of the company requiring him to flag around such curves as the one in question, the court should not have charged the jury that the burden of proof was upon the defendant to prove contributory negligence, without advising the jury that, upon that issue, they should consider all the evidence, regardless of whether it came from the plaintiff or the defendant."

[3] Appellant's objection presented in the lower court to the charge upon the burden of proof was too general to raise the criticism here made. Isbell v. Lennox (Tex. Sup.) 295 S. W. 920. The charge as an abstract proposition of law was correct and there was nothing in the objection made to advise the trial court of the defect therein here complained of. If it be conceded that the evidence called for such a qualification of the charge as here asserted by appellant, then this should have been distinctly called to the attention of the trial court and opportunity afforded for correction. In the recent case of Isbell v. Lennox, supra, the plaintiffs in error objected to the court's charge in the following language:

"The plaintiffs except and object to the court giving, in charge to the jury, the following portions of the charge, to wit: [Then followed a paragraph of the court's charge.]"

Another paragraph of the court's charge was objected to in the same way and in the same language. It was held that this objection did not comply with the requirements of article 2185, R. S. In so holding Justice Pierson said:

"This statute was designed to correct a very important handicap or evil in the trial of cases. Its purpose in requiring the parties or their attorneys to present to the court their objections to the charge clearly is that the party objecting must apprise the court of the error in his charge with a view to its correction.

"The objection must point out to the court the error complained of. If it fails to do that, it does not meet the purpose and requirement of the statute and is no objection at all.

"The necessary and only construction that can be given to the language of the article is that it requires of a party more than a mere statement that he objects; it must point out the error. Any other construction would destroy its effect and make it meaningless. The gateway would be thrown open for the creeping in of the evils of the old practice when no objections were required. * * *"

The objection in the present case is just as general as the one in Isbell v. Lennox. It fails to "meet the purpose and requirement of the statute and is no objection at all."

The third proposition is therefore without merit.

Affirmed.