## TEXAS ELECTRIC RY. CO. v. TEXAS EMPLOYERS' INS. ASS'N et al. (No. 652.)

Court of Civil Appeals of Texas. Waco.
June 21, 1928.

Rehearing Denied Sept. 20, 1928.

·Witt, Terrell & Witt, of Waco, for appellant.

Lawther, Pope, Leachman & Lawther, of Dallas, and Williams, Williams, McClellan & Lincoln, of Waco, for appellees.

STANFORD, J. Suit by appellees, Texas Employers' Insurance Association and Mrs. Georgia C. James, to recover damages for the death of George W. James, whose death it was alleged was the result of a collision between an automobile being driven by the said George W. James and an interurban car operated by appellant. It was alleged that the Texas Employers' Insurance Association, by reason of being obligated to pay compensation to Mrs. Georgia C. James, wife of the said George W. James, under the Workmen's Compensation Law (Rev. St. 1925, art. 8306 et seq.) was entitled to subrogation to the extent of its liability to her. Appellees alleged that the said George W. James was traveling in an easterly direction along Renick street in an automobile, and, while attempting to cross the track of appellant in the corporate limits of the city of Waco, one of appellant's electric cars struck said automobile while on the crossing of its track with said Renick street, and killed the said George W. James. Appellees alleged several specific acts of negligence on the part of the employees of appellant operating said interurban car which proximately caused the collision and death of the said James. Appellant, in addition to a general demurrer, special exceptions and a general denial, pleaded several special defenses. As there is no contention but that the pleadings were sufficient to raise all issues made by the evidence, it is not necessary to more fully set out the pleadings of either party.

The case was submitted to a jury on many special issues, all of which were found favorable to appellees, basing liability on the part of appellant on the grounds:

(1) That the motorman in charge of said interurban car, in approaching said Renick

street crossing, failed to give any warning of its approach.

(2) That the motorman in charge of said interurban car was negligent in operating said car, as it approached said crossing, at the rate of speed it was operated.

(3) That the deceased was in peril on said crossing, and the motorman discovered his peril in time to have avoided the injury, etc.

In response to a number of special issues, the jury exonerated the deceased from every conceivable phase of contributory negligence, and assessed the damages at $18,150. After a remittitur of $3,150, the court entered judgment against appellant for $15,000. Appellant has duly appealed, and presents the record here for review.

■ Under several propositions, appellant contends, in effect, that the court should have instructed a verdict in its favor, or have set aside the findings of the jury exonerating deceased from contributory negligence and finding the negligence of appellant the cause of the collision. The record discloses the collision occurred in East Waco on the crossing of Renick street with the interurban tracks. Renick street extends east from the Waco-Dallas road. The interurban, in approaching Waco from the north, crosses Renick street, making an angle of about 60 degrees between the north line of Renick street and the west rail of the track of the interurban. Deceased, traveling north along the Dallas road, turned into Renick street, and, while proceeding east along Renick street and while on the crossing of said street over the interurban track, was struck by a south-bound interurban car, and almost instantly killed. The distance from the Dallas road along Renick street to the interurban tracks is 250 feet. Almost along this entire distance the view to the north is completely obscured by buildings, high plank fences, signboards, etc., so that it is difficult for one approaching said crossing on Renick street going east to see an interurban approaching said crossing from the north, until he gets near the interurban tracks. Just as the driver of an automobile emerges from the obstructions on the north side of Renick street, the front of the automobile is visible from the north for a distance of 215 feet along the track. The deceased, early on a cold morning, approached said crossing going east. His engine was not working well from the time he turned into Renick street until he reached said crossing. The evidence is sufficient to show that the interurban approached said public street crossing at a rate of speed ranging from 30 to 40 miles per hour, without giving any warning of its approach by gong, whistle, or otherwise, prior to the collision. We think the findings of the jury that the appellant, under all the circumstances, was guilty of negligence in its failure to give any warning and in the rate of speed at which its inter-

urban approached said crossing, and that such negligence was the proximate cause of the collision and death of the deceased, are sustained by the evidence.

■■ But appellant contends the deceased was guilty of contributory negligence. As above set out, there were obstructions along the north side of Renick street from where said street leaves the Dallas road to a point close to appellant's right of way, which obstructed the view of a south-bound interurban approaching said crossing, by one approaching said crossing going east along Renick street, by reason of which, doubtless, the deceased did not see said approaching interurban until he was very close to said crossing. He probably listened for an approaching car but heard none, for, as found by the jury, no warning of the approach of said car was given. It is also probable that the attention of the deceased was momentarily distracted by an unexpected trouble with the carbureter of his engine. The evidence indicates that he approached said crossing slowly and cautiously, but that he did not see or know of the approach of said interurban until he was on or so near the track that he could not stop before going upon it. By reason of obstructions on each side of Renick street at said point, he could not turn either to the right or left and thereby avoid going upon the track. At least, said obstructions justified him, in the exercise of ordinary care, in believing that he could not do so. Believing he could not turn to either side off of Renick street to a place of safety, and not being able to stop before getting on the track, doubtless he thought the safest course was to try to get across, but in so doing he did not realize or anticipate the excessive rate of speed at which the interurban was running. In passing upon the sufficiency of the evidence to raise an issue of fact for the jury as to the contributory negligence of one injured or killed on a railway crossing, it is the duty of the appellate court to consider the evidence most favorably for the plaintiff from the position of the injured party just before and at the time of the accident, rejecting all evidence favorable to the defendant. The jury had a right to so consider the evidence, and the reviewing court must so consider it. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139; Barron v. Houston, E. & W. T. Ry. Co. (Tex. Com. App.) 249 S. W. 825. We think, as to whether or not the deceased, under all the circumstances surrounding him at the time, was guilty of contributory negligence, was clearly, under the well-settled law of this state, a question of fact for the determination of the jury. Freeman v. G., H. & S. A. Ry. Co. (Tex. Com. App.) 285 S. W. 607; G., H. & S. A. Ry. Co. v. Duty (Tex. Com. App.) 277 S. W. 1058; Emberlin v. Wichita Ry. Co. (Tex. Com. App.) 267 S. W. 463; Lancaster v. Browder (Tex.

Com. App.) 256 S. W. 905; Barron v. Houston, E. & W. T. Ry. Co., supra; St. Louis, S. F. & T. Ry. Co. v. Morgan (Tex. Com. App.) 239 S. W. 607; Kirksey v. Southern Traction Co., supra; Trochta v. M., K. & T. Ry. Co. of Texas (Tex. Com. App.) 218 S. W. 1038.

 But the verdict of the jury on the issue of discovered peril rendered appellant liable, even if the deceased was guilty of contributory negligence. Trochta v. M., K. & T. Ry. Co. of Texas (Tex. Com. App.) 218 S. W. 1038; Houston, E. & W. T. Ry. Co. v. Kopinitsch (Tex. Civ. App.) 282 S. W. 884. Was there evidence to support this finding? The motorman testified:

"I saw the automobile when it came out from behind the signboard. * * * I mean to say that I saw that automobile just as soon as it could be seen by reason of those obstructions out there."

He further testified:

"I applied those brakes and threw this car into reverse the very moment and instant I saw Mr. James. * * * I did that because I knew it was a perilous condition right there. I knew that Mr. James was in a perilous condition, because he was coming right out on the track, and he wasn't very far away. I realized it was a perilous condition."

There is other evidence that the front of Mr. James' automobile, just as it merged from behind the signboard, was visible up the track for a distance of 215 feet. Two witnesses testified, in effect, that, if the interurban was going 15 miles an hour, it ought to have been stopped in an emergency within 50 to 70 feet, if at 20 miles an hour, within 100 to 125 feet, if at 25 miles an hour, within 175 to 200 feet, and if at 30 miles an hour, within 200 feet according to the witness Talley, and within 275 feet according to the witness McDonald. It is evident that a car is stopped gradually, and, if the brakes had been applied at a point 215 feet from the crossing, whatever the rate of the speed was, the speed of the car would have been greatly reduced by the time it reached the crossing, and the deceased probably would have been able to clear the crossing. There is evidence that the brakes were not applied until just as the collision occurred. There is other evidence that the brakes were not applied until the interurban was very close to the crossing. The interurban struck deceased's car while about the center of the track, and carried said automobile along in front of it some 160 or 170 feet, before it stopped, demolished said automobile, caused the ignition of some gasoline being carried in the rear of the car, and the wrecked car with the deceased under same was practically consumed by fire. The deceased was dead when pulled out of the fire and wreckage. We think the evidence was sufficient to raise the issue of discovered peril. We think also the court was correct in refusing appellant's request for an instructed verdict in its favor, and in submitting to the jury the issues of negligence, contributory negligence, and proximate cause. We think further the evidence is sufficient to support the findings of the jury on all of said issues, and there was no error in the action of the court in refusing to set aside any of said findings. We overrule all of appellant's contentions discussed above.

 Under other propositions appellant contends the court erred in refusing to give to the jury its specially requested issues Nos. 31, 33, and 35. The record discloses that, as an act of contributory negligence on the part of the deceased, appellant alleged, in substance, that there was installed on the automobile being driven by the deceased a lighting system, consisting of a gasoline engine, including a gasoline container full of gasoline, and that said container was in close proximity to the driver of the car, etc. In its special issue No. 31, appellant asked the court to submit to the jury to find if the deceased had a container with gasoline in it in close proximity to himself prior to and at the time of the collision, and in its special issue No. 33, to find if such act was negligence upon the part of the deceased, and in its special issue No. 35, to find if such negligence, if any, upon his part was the proximate cause of his death. A sufficient answer to appellant's contention, we think, is that special issues Nos. 40, 41, and 42, prepared and given by the court, presented practically the same issues in practically the same language as contained in appellant's requested issues. The jury found that the acts of negligence on the part of appellant were the proximate cause of the death of the deceased. The jury found further that the deceased was not guilty of contributory negligence in having about his car the said gasoline, and also that the death of the deceased was proximately caused by the collision. There can be no question but that the collision was the moving, efficient, proximate cause of the death of the deceased. It is immaterial that, by reason of the impact resulting from the collision, or by reason of the car being wrecked, or the wrecked car with the deceased in it or under it being carried 160 or 170 feet and mashed, crushed, and mangled under the car —all resulting from the collision—the gasoline was ignited and the car and deceased burned. There can be no question but that the collision set in motion a chain of events which, without any new independent intervening cause, resulted in the death of the deceased, and, this being true, it is immaterial whether the immediate cause of his death was being crushed or burned. It was not necessary for the court to present any issue on this phase of the case. We overrule these propositions.

 Under other propositions, appellant

contends the court erred in submitting the issue of discovered peril. In the sixth, seventh, and eighth special issues the court submitted to the jury to find whether, as the interurban upon the occasion in question approached Renick street crossing, the deceased was in a position of peril on or near said crossing, and if the perilous position, if any, of the deceased at said time and place was discovered by the motorman in charge of said car before the collision, and if the said motorman at said time and place realized the peril, if any, in which the deceased was situated. The ninth issue was:

"Did the motorman in charge of the interurban car in question, at the time and place in question, after discovering the peril of George W. James, if he did discover it, and after realizing his peril, if any, if he did realize it, fail to use all of the means available to him to avoid the injury to George W. James?"

The tenth issue was:

"Did the failure of said motorman to use all of the means available to avoid said injury, if you have found that he did so fail, constitute negligence as that term has been herein defined?"

The eleventh issue was:

"Was such negligence, if any, the proximate cause of the injuries suffered by George W. James?"

■ Appellant contends the court should have required the jury to find whether or not the motorman, after discovery of deceased's peril, "exercised ordinary care in the use of the means at hand to avoid the collision." This would have been correct and the usual way of submitting such issue, but to ask the jury in one issue if the motorman failed to use all the means at hand to avoid the collision, and in another issue, if so, if such failure was negligence as defined in the charge, is the same, in effect, as asking them in one issue if the motorman exercised ordinary care in the use of the means at hand. El Paso Electric Ry. v. Davidson (Tex. Civ. App.) 162 S. W. 937 (writ refused); Texas Central Ry. Co. v. Dumas (Tex. Civ. App.) 149 S. W. 543. We think no error is shown here, but, if there was error, as contended by appellant, as the jury found that appellant was negligent in approaching the crossing at the rate of speed it did and without warning by gong or whistle, and that such negligence was the proximate cause of the collision and that the deceased was not guilty of contributory negligence, such error, if any, in submitting discovered peril, was immaterial. These propositions are overruled. Trochta v. M., K. & T. Ry. Co., supra; Houston, E. & W. T. Ry. Co. v. Kopinitsch, supra.

■ Under its ninth proposition, appellant contends the court erred in giving the following charge on the burden of proof, to wit:

"The burden is on plaintiff herein to establish by a preponderance of the evidence the affirmative of special issues Nos. 1 to 11, inclusive, and 44. The burden is on defendant to establish the affirmative of special issues Nos. 12 to 45, inclusive,"

—the ground of objection being "that said charge imposed a greater duty and burden on appellant than that required by law." Appellant did not ask any special charge on the burden of proof, did not ask or request any qualification or modification of the court's charge, and in no way made more specific its objection, but relied entirely upon the general objection above stated. Our Supreme Court has held, in G., C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183, that objections to the charge of the trial court, which sufficiently specify the error therein, will preserve the point on appeal without the necessity of again directing the court's attention to the same subject by a special charge. From this we infer the objection should point out specifically wherein the charge is claimed to be erroneous. From the general objection that said charge placed a greater burden upon appellant than required by law, the court could not have known whether appellant's contention was that the burden should be placed upon appellee, or that no charge should be given on the burden of proof, or that said charge ought not to apply to all of said thirty-two special issues. From the objection made, the court could scarcely conceive that appellant was contending that said charge was defective in that it failed to instruct the jury to consider all evidence bearing upon the question of contributory negligence, whether introduced by appellant or appellee. This objection we think was too general to require consideration. Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; G., C. & S. F. Ry. Co. v. Conley, supra; M., K. & T. Ry. Co. of Texas v. O'Connor (Tex. Civ. App.) 298 S. W. 921 (writ dismissed); Chisos v. Llanez (Tex. Civ. App.) 298 S. W. 642. This proposition is overruled.

■ Under other propositions appellant contends that a new trial should have been granted because the verdict of $18,150 was obtained by lot. In reply, appellee contends that under the evidence the trial court was authorized to conclude that there was no previous agreement by the jury to be bound by the result of a quotient verdict, and that the portion of the verdict tainted by misconduct, if any, was definitely ascertainable and was cured by appellees' remittitur. On the hearing of said motion, all of the jurors testified fully as to the manner in which they arrived at said verdict, and their evidence is incorporated in the statement of facts. Before the court acted on said motion, appellee remitted $3,150 of said verdict, and the court overruled the motion for new trial and entered judg-

ment against appellant for $15,000. The record discloses the jury had no trouble answering the questions bearing upon the question of appellant's liability, but, when they came to assessing the amount appellee was entitled to recover, they were for amounts from $15,000 to $21,600. It seems eight jurors wanted to give appellee $20,000, one wanted to give her $21,600, two wanted to allow $16,200, and one wanted to allow $15,000. Being thus divided, one of the jurors suggested that each one put his name and the amount he wanted to allow on a piece of paper and add these several amounts, and divide same by 12, which they did, and obtained the result, $18,150. All of the jurors testified that, after this amount was reached, as above stated, it was adopted as their verdict by vote. Some testified there was further discussion before said vote was taken, but others denied this. Some of the jurors testified that before the quotient verdict was obtained they agreed to be bound by it, whatever it might be. Others testified that they did not so agree. It is certain from the evidence that some of the jurors did not agree to be bound by the result of the quotient damages obtained, and that others did so agree. As the court did not act on the motion for new trial until after the remittitur was filed, we cannot know what his action would have been in the absence of such remittitur. So, as we view the case, it is not necessary for us to pass upon the question as to whether or not it would have been error for the court to overrule said motion if said remittitur had not been made, and we will proceed to review the action of the court in overruling said motion in view of the remittitur of $3,150 having been entered. If the alleged misconduct of the jury would otherwise have been reversible error, was such rendered harmless by the remittitur of $3,150? It is certain from the testimony that, prior to any mention of a quotient verdict, all of the jurors were in favor of allowing appellees at least $15,000. This being true, the alleged misconduct could not relate to anything else except the method by which the verdict was increased beyond the minimum upon which all were agreed. It is true, one of the jurors who had been contending for $16,200 and another who had been standing out for $15,000, both, in arriving at the general average, put on their slips of paper $10,000, but they both testified with no contradiction that they did this to bring the general average down to as near as possible the amount for which they were contending. Under no view of this case can it be said that the alleged misconduct had any influence upon the general verdict. All the testimony shows that the question of liability had been settled against appellant before any mention of the amount of the verdict. The jurors ar-

rived at a fair agreement on every question involved, with no disagreement, except they differed in the amount of the verdict between $15,000 and a larger sum. If there was misconduct on the part of the jury, as contended by appellant, any possible harmful effect thereof to appellant, we think, was effectually removed by the remittitur of $3,150, reducing the amount to $15,000, for which judgment was rendered. I. & G. N. Ry. Co. v. Cooper (Tex. Com. App.) 1 S.W. (2d) 578; El Paso Electric Co. v. Whitenack (Tex. Com. App.) 1 S.W.(2d) 594; Bradley v. T. & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861; Pecos & N. T. Ry. Co. v. Coffman (Tex. Civ. App.) 160 S. W. 145 (writ refused); St. Louis S. W. Ry. Co. v. Gentry (Tex. Civ. App.) 98 S. W. 226 (writ refused). We overrule these propositions.

Appellant also contends the verdict was excessive. Mr. James, at the time of his death, was 54 years of age, and had an earning capacity of about $1,800 per annum. He was in good health, economical in his habits, and devoted to his wife and home. Under this evidence we cannot say the verdict as reduced to $15,000 was excessive. Baker v. Harmon (Tex. Civ. App.) 254 S. W. 517; I. & G. N. Ry. Co. v. McVey (Tex. Civ. App.) 81 S. W. 991; G., H. & S. A. Ry. Co. v. Bremer (Tex. Civ. App.) 217 S. W. 253.

We have considered all of appellant's assignments, and, finding no reversible error, overrule same, and affirm the judgment of the trial court.