**SOUTHERN CRUSHED CONCRETE, LLC, Appellant**

v.

**CITY OF HOUSTON, Appellee.**

No. 14–09–00873–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 17, 2010.

Rehearing En Banc Overruled March 24, 2011.

Stephen G. Tipps, Christina Espinosa Rodriguez, Rebecca Hengstenberg Moring, Derek R. McDonald, Whitney L. Swift, Evan Andrew Young, for Southern Crushed Concrete, LLC.

Kathy D. Patrick, Aundrea Kristine Frieden, Angus J. Dodson, Laura Jann Kissel, for City of Houston.

1. Tᴇx. Hᴇᴀʟᴛʜ & Sᴀғᴇᴛʏ Cᴏᴅᴇ Aɴɴ. § 382.001 *et. seq.* (Vernon 2010).

2. "The commission" is statutorily defined as the Texas Natural Resource Conservation Commission, Tᴇx. Hᴇᴀʟᴛʜ & Sᴀғᴇᴛʏ Cᴏᴅᴇ Aɴɴ. § 382.003(4) (Vernon 2010), but the Legislature later changed the agency's name to the

Panel consists of Justices BROWN, SULLIVAN, and CHRISTOPHER.

## MAJORITY OPINION

TRACY CHRISTOPHER, Justice.

In this land-use dispute, a concrete-crushing company asserts that a local ordinance is preempted by the Texas Clean Air Act, and thus, its enforcement violates the state constitution. The company additionally argues that in evaluating its application for a permit to operate a concrete-crushing facility, the city was statutorily required to limit its consideration to those laws and regulations in effect at the time the company applied for a permit from the Texas Commission on Environmental Quality. The parties filed cross-motions for summary judgment, and the trial court granted judgment in the city's favor. We affirm.

### I. Bᴀᴄᴋɢʀᴏᴜɴᴅ

Appellant Southern Crushed Concrete, LLC, f/k/a Southern Crushed Concrete, Inc. ("Southern"), operates a number of concrete-crushing facilities. Such facilities were not specifically addressed in the Texas Clean Air Act ("the Act")[1] or in the corresponding regulations of the Texas Commission on Environmental Quality ("the Commission")[2] before 2001. That year, the legislature directed the Commission to "prohibit the location of or operation of a concrete crushing facility within 440 yards of a building used as a single or multifamily residence, school, or place of worship."[3] Act of May 28, 2001, 77th

Texas Commission on Environmental Quality. Act of May 28, 2001, 77th Leg., R.S., ch. 965, 2001 Tex. Gen. Laws 1933, 1985 (eff. Jan.1, 2004).

3. Although there is no hyphen between *concrete* and *crushing* in the Act, we believe it is grammatically correct to hyphenate the

Leg., R.S., ch. 965, § 5.07, 2001 Tex. Gen. Laws 1933, 1961–62. The Commission responded by amending title 30, section 116.112 of the Texas Administrative Code to provide that, effective January 2003, "a concrete crushing facility must not be located or operated within 440 yards of any building used as a single or multi-family residence, school or place of worship." 28 Tex. Reg. 240 (2003) (Tex. Comm'n on Envtl. Quality, Distance Limitations). At that time, neither the Act nor the Commission's regulations regarding the location and operation of concrete-crushing facilities included specifications as to how the distance was to be measured, or the effect that construction of a home, school, or place of worship within 440 yards of a proposed concrete-crushing facility would have on a pending application for a permit. The legislature subsequently directed the Commission to fill that gap by adopting rules prohibiting the operation of a concrete-crushing facility within 440 yards of a home, school, or place or worship as measured "from the point on the concrete crushing facility that is nearest to the residence, school or place of worship toward the point on the residence, school, or place of worship that is nearest the concrete crushing facility." Tex. Health & Safety Code Ann. § 382.065 (Vernon 2010). As directed, the Commission amended the regulation, adopting the "facility-to-building" method of measurement prescribed by the legislature and specifying that "the measurement of distances to determine compliance with any location or distance limitation requirement in Texas Health and Safety Code, Chapter 382, shall be taken toward structures that are in use at the time the permit application is filed with the commission." 30 Tex. Admin. Code Ann. § 116.112(a) (2004).

In October 2003, Southern applied to the Commission for a permit to move a portable concrete-crushing facility to property located on State Highway 288 in Houston. But before the Commission ruled on the permit application, two key events happened. First, the Presbyterian School Outdoor Education Center became located near the property where Southern proposed to move its concrete-crushing facility. Second, on May 9, 2007, the City of Houston enacted an ordinance prohibiting concrete-crushing operations at a site on which the property line is within 1500 feet of a residential area or a tract on which "a child care facility, hospital, nursing home, place of worship, public park, school" or another concrete-crushing site is located. City of Houston, Tex., Code of Ordinances § 21–167 to –170 (2007). The proposed location of Southern's concrete-crushing facility is more than 440 yards from the school building; however, a property line of the land on which the school is located is within 1500 feet of the property line of the land on which the proposed concrete-crushing facility would be located.

Because the school had not been built at the time Southern applied for a permit (and is in any event more than 440 yards from the location of the proposed facility), the Commission granted Southern's requested Air Quality Permit on August 4, 2008. But because the property lines of the respective tracts on which the school and the proposed concrete-crushing facility are located are within 1500 feet of one another, the City denied Southern's application for a municipal permit.

Southern sued the City, seeking (a) a declaration that the ordinance is preempted by the Act and its enforcement would

phrase. *See* Bryan A. Garner, A Dictionary of Modern Legal Usage, 657–58 (Oxford University Press 2d ed. 1995). We therefore refer to

concrete-crushing facilities except when quoting the Act and the corresponding regulations.

violate the Texas Constitution, and (b) injunctive relief prohibiting the City from enforcing the ordinance and directing it to issue Southern a permit to operate the facility at the proposed location. The parties filed cross-motions for traditional summary judgment, and the trial court granted the City's motion, denied Southern's motion, and dismissed Southern's claims with prejudice.

## II. ISSUES PRESENTED

In its first issue, Southern argues that the ordinance is preempted by the Act and therefore is unconstitutional, either on its face or as applied. In its second issue, Southern argues that the City was required by section 245.002(b) of the Local Government Code to consider Southern's permit application based solely on the regulations and ordinances in place when Southern applied to the Commission for a permit in October 2003.

## III. STANDARD OF REVIEW

Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex.2005). When we review cross-motions for summary judgment, we consider both motions de novo and render the judgment that the trial court should have rendered. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex.2007).

■ To prevail on a claim that a provision is unconstitutional on its face, the complaining party must establish that the ordinance, "by its terms, always operates unconstitutionally." *See City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 240–41 (Tex.2001) (per curiam). In an "as applied" constitutional

challenge, the complaining party concedes that an ordinance generally is constitutional but contends it is unconstitutional when applied to a particular person or set of facts. *Id.* at 240.

## IV. ANALYSIS

### A. The Clean Air Act Does Not Preempt the City Ordinance.

■ On appeal, Southern argues that the local ordinance is unconstitutional, first, because it is preempted, and second, because the method it prescribes for measuring distances between concrete-crushing facilities and other land uses is arbitrary and unreasonable. In the trial court, however, Southern moved for summary judgment only on the ground that the ordinance was preempted. Because the argument that the ordinance is arbitrary and unreasonable has not been preserved for our review, we resolve Southern's first issue considering only the constitutional challenge based on preemption. *See* TEX. R.APP. P. 33.1(a).

According to Southern, the City's ordinance is preempted by a state statute and the state constitution. Specifically, Southern contends the ordinance violates the Texas Clean Air Act's provision that "[a]n ordinance enacted by a municipality must be consistent with this [Act] and the commission's rules and orders and may not make unlawful a condition or act approved or authorized under this [Act] or the commission's rules or orders." TEX. HEALTH & SAFETY CODE ANN. § 382.113(b). This provision echoes the state constitutional requirement that no ordinance of a home-rule city "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5.

Southern argues that the ordinance is inconsistent with the Act—and thus, with the state constitution—in that the City (1) requires a larger buffer zone between concrete-crushing facilities and other preferred property uses, (2) requires concrete-crushing facilities to be separated from more types of property, and (3) measures the buffer zone using the distance between property lines rather than the "facility-to-building" method described in the Texas Clean Air Act. To evaluate these arguments, however, we first must clarify the test for preemption.

**1. State statutes do not necessarily preempt local ordinances affecting the same subject.**

As Southern describes the applicable test, an ordinance is preempted if it represents a municipality's attempt to regulate an activity already regulated by the State. According to Southern, "in a specific area in which the State does act, municipalities may not." Southern contends that by passing the Texas Clean Air Act and delegating regulatory authority to the Commission, the legislature eliminated the City's authority to regulate the location of concrete-crushing facilities and granted that power exclusively to the Commission.

But as the Texas Supreme Court stated twenty years ago, "the mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted." *City of Richardson v. Responsible Dog Owners*, 794 S.W.2d 17, 19 (Tex.1990); *see also City of Beaumont v. Jones*, 560 S.W.2d 710, 711 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.) ("The State's entry into a field of legislation does not automatically preempt that field from city regulation."). To the contrary, the powers of a home-rule city such as Houston may be limited by the constitution, the general law, or by the city's charter, but any such

limitation must be either express·or implied with "unmistakable clarity" from the provisions of the law, charter, or statute. *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex.1975) (sub. op.).

In contrast, the powers of a state agency such as the Commission are limited to those expressly conferred by the legislature, together with such implied powers as are reasonably necessary to carry out the express responsibilities given to it by the legislature. *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 315 (Tex.2001). Thus, an agency has only the powers that the legislature has granted, while a home-rule city has all those powers not otherwise limited by the constitution, state law, or its own charter. In evaluating the implications of the Act, we bear in mind that "a general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached. In other words, both will be enforced if that be possible under any reasonable construction." *City of Beaumont v. Fall*, 116 Tex. 314, 324, 291 S.W. 202, 206 (1927).

We therefore evaluate whether the Act expressly or impliedly preempted the City's authority to enact the ordinance or if instead there is a reasonable construction under which both the Act and the ordinance remain enforceable. We begin by examining the Act's text to determine whether the legislature expressly granted exclusive regulatory authority to the Commission or expressly withdrew the authority of a home-rule city to regulate the location of concrete-crushing facilities in the manner seen here. If there are no such express provisions, we then must determine whether preemption is implied with unmistakable clarity.

**2. The Act does not expressly preempt the City's authority to regulate the location of concrete-crushing facilities.**

█ Neither the Act nor the state constitution contains language expressly withdrawing a home-rule city's power—or granting the Commission exclusive authority—to enact the three types of regulations at issue here, i.e., specifying land uses that must be separated from a concrete-crushing facility by a buffer zone, determining the size of that buffer zone, and prescribing the method for measuring it. To the contrary, the legislature expressly stated that "a municipality has the powers and rights as are otherwise vested by law in the municipality to ... abate a nuisance; and ... enact and enforce an ordinance for the control and abatement of air pollution, or any other ordinance, not inconsistent with [the Act] or the commission's rules or orders." TEX. HEALTH & SAFETY CODE ANN. § 382.113(a). The legislature imposed only the two restrictions previously mentioned: an ordinance must be consistent with the Act and the commission's rules and orders and may not make unlawful a condition or act approved or authorized under the Act or the commission's rules or orders. *Id.* § 382.113(b). If the ordinance violates one of these restrictions, however, then its preemption is implied with unmistakable clarity.

We therefore turn next to the first of these restrictions and address the question of whether the Act and the ordinance are consistent.

**3. The Clean Air Act and the City ordinance are consistent.**

█ When the legislature has stated the purpose of a state law and specified the criteria for evaluating compliance with it, then a local ordinance imposing different requirements is inconsistent with the

state statute. *See City of Wichita Falls v. Abell,* 566 S.W.2d 336, 338–39 (Tex.1978) (where alcohol sales within 300 feet of a school were prohibited, a local ordinance requiring the distance to be measured building-to-building was inconsistent with state law requiring the distance to be measured along property lines). But if the state and local provisions serve different purposes, then different methods of determining compliance do not render the two provisions inconsistent. *See Robinson v. City of Longview,* 936 S.W.2d 413, 417 (Tex.App.-Tyler 1996, no writ) (holding that ordinance prohibiting topless dancing at locations where alcoholic beverages are served was not inconsistent with state law prohibiting municipalities from imposing stricter standards on premises where a liquor license is required). Thus, to determine if the ordinance is inconsistent with state legislation, we begin by comparing the purpose of each. *See City of Weslaco v. Melton,* 158 Tex. 61, 63–64, 308 S.W.2d 18, 19–20 (1958) (holding that an ordinance banning the sale of grade A raw milk was not inconsistent with a state statute for grading and labeling milk because the two provisions served different purposes); *see also City of Brookside Vill. v. Comeau,* 633 S.W.2d 790, 796 (Tex.1982) ("[L]ocal regulation, ancillary to and in harmony with the general scope and purpose of the state enactment, is acceptable."). In ascertaining these purposes, we rely on the statements of the body that enacted the provision. *See, e.g., Melton,* 158 Tex. at 63, 308 S.W.2d at 19; *Robinson,* 936 S.W.2d at 415; *Oniyide v. State,* 756 S.W.2d 370, 372 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd).

█ The stated purpose of the Texas Clean Air Act is "to safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the pro-

tection of public health, general welfare, and physical property, including the esthetic enjoyment of air resources by the public and the maintenance of adequate visibility." TEX. HEALTH & SAFETY CODE ANN. § 382.002(a). The Commission is to accomplish the Act's purpose "through the control of air contaminants by all practical and economically feasible methods." *Id.* § 382.011(b). To this end, the Commission "may issue orders and make determinations as necessary *to carry out the purposes of [the Act]*." *Id.* § 382.023(a) (emphasis added). In doing so, the Commission "shall consider the facts and circumstances bearing on the reasonableness of emissions." *Id.* § 382.024. Thus, a permit from the Commission to construct and operate a concrete-crushing facility at a given location signifies the Commission's determination that the facility is not expected to have an unacceptably adverse effect on air quality or the public's enjoyment of air resources, because among other things, the facility would be located not less than 440 yards from a building used as a home, school, or place of worship.

The city ordinance serves a different purpose. In the ordinance's preamble, the City reports the findings on which the ordinance is based, but it contains no mention of air quality, pollution, emissions, or contaminants. Rather, the City states that concrete-crushing sites are "reasonably expected to have a negative effect on residential property values and can affect other forms of land use, such as public parks, schools, child care facilities, hospitals, nursing homes and places of worship." HOUSTON, TEX., CODE OF ORDINANCES ch. 21,

art. VI, div. 3, pmbl. The City's broad protection of such land use differs from the Act's narrower purpose of controlling and abating air pollution, but these goals are not inconsistent.

Understandably, the provisions employ different methods because they serve different ends. For example, Southern points out that the City's method for measuring the buffer zone required under the terms of its ordinance differs from the Commission's method for measuring the buffer zone required under the Act. But the Commission expressly provided that the facility-to-building measurement is used "to determine compliance with any location or distance limitation requirement in [the Texas Clean Air Act]." 30 TEX. ADMIN. CODE ANN. § 116.112(a).[4] By its terms, this provision has no application outside of the Act. Similarly, the ordinance's terms do not apply when determining compliance with the Act's requirements. *Cf. Abell,* 566 S.W.2d at 339 (where state law prescribed method to measure the required distance between a school and a "wet" area, municipality could not prescribe a different method for measuring the same thing). The methods for determining compliance with the ordinance and with the Act are different, but because they serve different purposes, they are not inconsistent.

We conclude that the ordinance is consistent with the Act and with the Commission's rules and orders. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.113(b). We therefore turn to the remaining requirement of this provision of the Act, and once again,

---

4. We note that this regulation was not adopted until after Southern filed its permit application with the Commission in October 2003. If, as Southern contends in its second issue, the only laws and regulations relevant to the proposed concrete-crushing facility are those that were in effect when Southern initially applied for a permit, then the measurement methods prescribed respectively by the Commission and by the City would be equally irrelevant, because neither was in effect at that time.

compare the language of the statute with that of the ordinance.

**4. The ordinance does not make unlawful a condition or act approved or authorized under the Act or the Commission's rules or orders.**

It is significant that the provisions drafted respectively by the state legislature, the Commission, and the Houston City Council each employ the language of prohibition. The state legislature directed the Commission "to prohibit" concrete-crushing operations in certain areas, *see id.* § 382.065(a), and the Commission drafted its regulation to specify that such facilities "must not be operated" in these areas. 30 TEX. ADMIN. CODE ANN. § 116.112 (2004). The Houston City Council similarly stated that the director of the health department "s hall not issue a permit" for concrete-crushing operations in designated areas. HOUSTON, TEX., CODE OF ORDINANCES ch. 21, art. VI, § 21–170 (2007).

▇▇▇ These prohibitions imply nothing about activities that may be permitted—or prohibited—outside the geographical zones to which each applies. *See City of Santa Fe v. Young,* 949 S.W.2d 559, 560 (Tex. App.-Houston [14th Dist.] 1997, no writ) (city ordinance prohibiting sandpits within 200 feet of a road was not preempted by a state statute prohibiting sandpits within twenty-five feet of a roadway). Within a 440–yard radius of certain buildings, both the statewide regulation and the City ordinance prohibit concrete-crushing operations. Beyond the 440–yard radius of buildings used for residential, educational, or religious purposes, the City ordinance prohibits concrete-crushing operations at some locations, but the state prohibition does not apply at all. Thus, in Houston, the locations at which concrete-crushing operations are barred by the Texas Clean Air Act are effectively a subset of the universe of locations at which such opera-

tions are prohibited: everywhere that both provisions apply, both provisions effectively prohibit the same activity. And in the areas where only one provision applies, there can be no conflict. *See id.* at 560–61.

This analysis is not changed simply because the Commission has issued a permit for Southern to construct and operate a proposed concrete-crushing facility in an area where the City will not issue a permit. A permit from the Commission represents that body's determination that the proposed facility will not have an unacceptably adverse effect on air quality, either because it complies with Act's requirements—including distance limitations—or because the proposed facility falls within an exemption to the Act's requirements. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.065. The permit is not an exemption from the requirements of a local ordinance designed to prevent such operations from adversely affecting other land uses and residential property values.

We conclude that the ordinance does not make unlawful an act or condition authorized or approved under the Act or the Commission's rules or orders. We accordingly overrule Southern's first issue and hold that the ordinance does not violate the Act or the state constitution and is not preempted.

**B. The City Ordinance Does Not Violate the Uniformity–of–Requirements Provision.**

In its second issue, Southern contends that the ordinance violates the uniformity-of-requirements provision of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 245.002 (Vernon 2005). Under this statute, an agency must consider the approval or disapproval of a permit application "solely on the basis of any orders, regulations, ordinances, rules, ex-

piration dates, or other properly adopted requirements in effect at the time" the original permit application was filed. *Id.* § 245.002(a)(1). The statute further provides,

> If a series of permits is required for a project, the orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for consideration of all subsequent permits required for the completion of the project.

*Id.* § 245.002(b).

 Southern argues that under the terms of this statute, the City was required to evaluate its permit application considering only those requirements in effect in October 2003. Because the City denied the application based on the local ordinance enacted in 2007, Southern reasons that the City violated the statute.

But the statute has an exception: it does not apply to "regulations that specifically control only the use of land in a municipality that does not have zoning and that do not affect landscaping or tree preservation, open space or park dedication, lot size, lot dimensions, lot coverage, or building size." *Id.* § 245.004(3). And as previously discussed, the stated purpose of the City ordinance is to regulate land use.

Southern asks us to ignore this language. According to Southern, the ordinance is an "air pollution" regulation because it provides that "the director [of the health department] may develop rules to ensure that particulate matter originating on a site or as a result of the operations on the site do not create a nuisance." HOUSTON, TEX., CODE OF ORDINANCES ch. 21,

art. VI, § 21–173. It further provides that "[a]n application shall not be considered complete unless accompanied by any drawings, descriptive data, emissions information, permit fees, ownership information, contact information, and other pertinent data that may be required by the director." *Id.* § 21–171(b). These provisions permit but do not require the director to develop rules concerning air pollution, and significantly, Southern does not contend that the director of the health department has developed such rules. Thus, regardless of whether the ordinance's scope is expanded in the future, it is at present a land-use regulation.

Southern also points out that the ordinance is located in the Code of Ordinances within an article entitled "Air Pollution." Further, Southern directs our attention to an earlier draft of the ordinance in which the preamble focused on the City's air quality.[5] But land-use regulations may be found scattered throughout the City's Code of Ordinances. *Cf. Purdy v. State,* 159 Tex.Crim. 154, 261 S.W.2d 850, 851 (1953) (explaining that the title of a municipal ordinance is not required to embrace its subject, and the ordinance's purpose need not be stated in its caption). Moreover, the preamble language to which Southern refers is not found in the final version of the ordinance, and we must presume the deletion was intentional. *See Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 443 (Tex.2009) ("It is, of course, axiomatic that the deletion of language better indicates the Legislature's intent to remove its effect, rather than to preserve it."). Regardless of whether other purposes were considered in the past, the ordinance as enacted regulates only the use of land.

---

5. Southern also relies on material outside the record, which we do not consider. *See* Tex R. APP. P. 38.1(i).

Because the City's ordinance is a land-use regulation, it is not subject to and does not violate the uniformity-of-requirements provision. We therefore overrule Southern's second issue.

## V. CONCLUSION

We conclude that the City's ordinance governing the location of concrete-crushing sites is neither preempted nor unconstitutional, but is instead a land-use regulation that is exempt from the uniformity-of-requirements provision•of the Local Government Code. We therefore affirm the trial court's judgment.

BROWN, J., dissent.

JEFFREY V. BROWN, Justice, dissenting.

As a home-rule municipality, the City of Houston has broad powers of self-government. But the constitutional provision that confers those powers also prohibits the city from passing ordinances that "contain any provision inconsistent with" acts of the Texas Legislature. Tex. Const. art. XI, § 5. Under our state constitution, not surprisingly, statutes are superior to ordinances. Because I believe the Texas Clean Air Act preempts the ordinance in question, I respectfully dissent.

In considering the preemption question, the majority reaches two broad conclusions. First, because the Act and the ordinance supposedly each address a different governmental purpose, the majority has determined that "the ordinance is consistent with the Act and with the Commission's rules and orders." Second, and also related to the alleged distinction of purpose, the majority concludes that "the ordinance does not make unlawful an act or condition authorized or approved under the Act or the Commission's rules or orders." I disagree on both counts.

I

Whether the city's purpose for enacting the ordinance is different from the legislature's purpose in passing the Act is irrelevant. The question in a state-law preemption case is whether the municipal ordinance and the state statute actually regulate the same activity; it is not an inquiry into what distinct purpose the municipality has articulated in passing an ordinance which conflicts with a statute. See City of Brookside Village v. Comeau, 633 S.W.2d 790, 796 (Tex.1982); Robinson v. City of Longview, 936 S.W.2d 413, 416 (Tex.App.-Tyler 1996, no writ); Banknote Club & Stan's Boilermaker v. City of Dallas, 608 S.W.2d 716, 718 (Tex.Civ. App.-Dallas 1980, writ ref'd n.r.e.).

Neither the constitution nor any preemption case the majority relies on plainly allows an ordinance to run afoul of a legislative act merely because the ordinance purportedly aspires to a different purpose. An ordinance survives a preemption challenge not because its purpose differs from the statute's, but because the activity it regulates is at best only ancillary to the activity the statute concerns. This is true for all the instances in which the majority maintains courts have upheld ordinances because of their disparate purposes. See Comeau, 633 S.W.2d at 796 (state regulates mobile-home construction safety and installation; city regulates location and density of mobile homes in city limits); City of Weslaco v. Melton, 158 Tex. 61, 308 S.W.2d 18, 19–20 (1958) (state prescribes how milk will be graded and labeled; city prohibits sale of unpasteurized milk); Robinson, 936 S.W.2d at 417 (state regulates sale of alcoholic beverages; city regulates sexually oriented businesses); Oniyide v. State, 756 S.W.2d 370, 372 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd) (state regulates coin-operated amusement machines; municipality regulates structural

configuration and operation of adult arcades).

Texas courts define as "inconsistent" or "conflicting"—and therefore preempted—any local enactment that attempts to regulate in a more or less restrictive way the same activity a statute already directly regulates. *City of Santa Fe v. Young,* 949 S.W.2d 559, 561 (Tex.App.-Houston [14th Dist.] 1997, no writ); *Comeau,* 633 S.W.2d at 796; *City of Wichita Falls v. Abell,* 566 S.W.2d 336, 338–39 (Tex.Civ.App.-Fort Worth 1978, writ ref'd n.r.e.); *City of Fort Worth v. McDonald,* 293 S.W.2d 256, 258 (Tex.Civ.App.-Fort Worth 1956, writ ref'd n.r.e.); *Prescott v. City of Borger,* 158 S.W.2d 578, 581 (Tex.Civ.App.-Amarillo 1942, writ ref'd). That is what has happened in this case. The city has established location and distance requirements that are flatly inconsistent with—and more restrictive than—those prescribed in the Act and the Commission's rules; the distance setbacks are greater and the method of measurement is more expansive. The city's more restrictive requirements impermissibly encroach upon the narrow field of regulation that the Act carves out and reserves to the state: location requirements for concrete-crushing operations. Because of this encroachment, the Act preempts the ordinance.

Allowing municipalities to draft ordinances that conflict with statutes on the pretense that the purpose of the local regulation differs from that of the statute would largely put an end to state-law preemption. Cities could essentially nullify state regulations by simply stating a justification for the ordinance that differs from the purpose the legislature had for passing the statute. And thus home-rule ordinances would become constitutionally superior to acts of the legislature.

## II

The majority also concludes that "the ordinance does not make unlawful an act or condition authorized or approved under the Act or the Commission's rules or orders." The rationale is that the permit the Commission issued to Southern Crushed Concrete "authorizing the construction and operation of" a concrete-crushing facility is not actually that. Instead, according to the majority, the permit represents the Commission's "determination that the proposed facility will not have an unacceptably adverse effect on air quality." And because the ordinance purports to regulate land use rather than air quality, the rationale goes, that means the ordinance does not actually override the permit.

The majority also maintains that the ordinance does not render unlawful a state-authorized act because the Act's location restrictions "are effectively a subset of the universe of locations at which such operations are prohibited" by the ordinance. Here, the majority relies on *City of Santa Fe v. Young,* 949 S.W.2d 559 (Tex.App.-Houston [14th Dist.] 1997, no writ).

*Young* concerns the Texas Aggregate Quarry and Pit Safety Act, which prohibits sandpits within twenty-five feet of a roadway and requires certain safety devices for quarries and pits located within 200 feet of a roadway. *See* Tex. Nat. Res.Code § 133.001–093. The City of Santa Fe passed an ordinance that prohibits sandpits within 200 feet of a roadway and requires a permit before any quarry or pit may be dug within the city limits. This court held that the statute in *Young* did not wholly preempt the ordinance, and that the city was free to regulate the digging of pits and quarries beyond the zone the statute specifically addressed. 949 S.W.2d at 560–61.

The majority cites *Young* when it concludes that the City of Houston may prohibit concrete-crushing facilities beyond the restrictions prescribed by the Act, even if the Commission has issued a permit for such a facility. But unlike this case, the ordinance in *Young* does not purport to override a permit a state agency has actually issued to one of the litigants. Moreover, in *Young* we held that "the only legislative intention that [was] unmistakably clear in this statutory language [was] the intention to preclude other entities from regulating *safety devices* for the quarries and pits governed by the Act." *Id.* at 560 (emphasis in original). In this case, however, it is the very location of concrete-crushing facilities that is preempted.

Under the majority's reading of *Young*, municipalities are always free to expand the limitations state law places on regulated behavior. Whenever a city believes a state-imposed distance requirement is too lenient, it can lengthen it with constitutional impunity. State-law preemption under the Texas Constitution is simply not that weak.

\* \* \*

The ordinance in this case is unconstitutional. It accomplishes nothing that state law doesn't already accomplish except when it varies from state law. And when it does that, it's preempted. I respectfully dissent.