

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00241-CV

IN THE INTEREST OF M.S., JR., A
CHILD

----------

## FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 323-101667-15

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

This is an ultra-accelerated appeal[2] in which Appellant appeals the

termination of his parental rights to his son, Mark.[3]  In four issues, Appellant

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

[3]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights).

challenges the sufficiency of the evidence to support the trial court's constructive-abandonment, prolonged-incarceration, and best-interest findings. Appellant also argues that he was not given proper notice regarding the trial court's court-ordered services finding. We will affirm.

## II. BACKGROUND

Brittney Newman, a conservatorship worker for the Texas Department of Family and Protective Services (Department), testified at the termination trial that Mark was born in March of 2015, and that the Department had been appointed permanent managing conservatorship of Mark since April 20, 2015. According to Newman, Mark was placed in foster care because he and his biological mother had tested positive for methamphetamine and because the mother was unable to provide appropriate placement with relatives. Newman averred that at the time of Mark's placement with the Department, there was an alleged father—not Appellant—and that DNA tests later revealed this man was not Mark's biological father. By Newman's account, Appellant and the original alleged father informed the Department that Appellant could be Mark's biological father. After failing to attend the first scheduled DNA test, later DNA testing revealed that Appellant is Mark's biological father.

On July 12, 2016, Appellant signed a waiver of service acknowledging his paternity and visited Mark for the first and only time. Three days later, police arrested Appellant for DWI.

2

Newman stated that on August 30, 2016, the trial court terminated Mark's mother's parental rights, and the final order included court-ordered services for Appellant. Newman averred that Appellant had been present at Mark's mother's termination trial with counsel and that he agreed to the court-ordered services. Part of the court-ordered services required Appellant to obtain safe, stable, and appropriate housing for Mark, but Newman averred that Appellant had not done so. Appellant was also ordered to obtain stable employment, which Newman said that he had not done. Because Appellant has a criminal history that includes numerous convictions for possession of controlled substances, Appellant was also ordered to submit to drug testing, but because he was jailed shortly after the court's order, according to Newman, Appellant had never submitted to the court-ordered drug testing—although Appellant did pass one drug test prior to the court-ordered services. Newman said that Appellant also failed to participate in and successfully complete court-ordered counseling and parenting classes.

Newman averred that in addition to being jailed for the DWI, Appellant was eventually incarcerated for a separate charge of burglary. Newman further averred that even though Appellant had the ability to visit Mark twice weekly between the time he was in jail and his ultimate incarceration, he had only visited Mark the one initial time. Newman also said that Appellant had failed to maintain court-ordered contact with the Department.

Newman stated that she had concerns about Appellant's decision making because despite knowing that he was Mark's biological father, he admittedly still chose to drive intoxicated. She also averred that she was concerned that Appellant could not provide a safe and stable environment for Mark due to Appellant's drug use, lack of employment, and the instability from consistently being in and out of confinement. Newman said that through his actions, including not visiting Mark when he had the opportunity, Appellant had never indicated that he wanted to maintain a relationship with Mark.

Regarding a possible placement for Mark, Newman averred that Appellant provided her with two options: his parents or his cousin. But Newman said that Appellant's parents told her that they were too old to care for Mark and that they were unwilling to child-proof their home. Newman stated that the cousin initially indicated that she would be willing to care for Mark but that the cousin eventually stopped communicating with the Department.

Newman said that Mark was currently placed in a foster home where he had been for over two years and that the foster father was in attendance at trial. By Newman's account, Mark was initially underweight because of being prematurely born and the effects of methamphetamine but that now under foster care, Mark is "doing very well, very healthy." Newman also said that Mark was initially developmentally delayed but that now he was at an appropriate developmental state. Newman further averred that Mark's foster parents had provided proper medical care for Mark and that they were meeting his emotional

4

and developmental needs. She also said that the foster home was a loving home and that the foster parents had other children in the home whom Mark has bonded with. According to Newman, Mark has bonded with the foster parents and calls them "mommy and daddy." By Newman's account, the foster family is the only family Mark has ever known.

Newman testified that it was the Department's view that Appellant's parental rights to Mark should be terminated and that it would be in Mark's best interest if the trial court did so. She also said that she believed it would be traumatic to Mark to now separate him from the foster family that he had bonded with and that Mark barely knows Appellant. Newman stated that it was the Department's plan that the trial court continue the Department's appointment as permanent managing conservator of Mark "pending a hopeful adoption with the foster parents."

In addition to Newman's testimony, the Department also introduced a signed statement by Appellant wherein he acknowledged his right to attend the trial but he declined to do so. The Department also introduced a certified copy of Appellant's burglary conviction demonstrating that he is currently serving a four-year sentence. The Department further introduced certified copies of Appellant's convictions for DWI misdemeanor repetition, for possession of methamphetamine, and for possession of cocaine.

The trial court found that Appellant had constructively abandoned Mark, that Appellant had failed to complete court-ordered services, and that Appellant

5

had been convicted of an offense for which he is likely to be incarcerated for a period of two years or more. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N), (O), (Q) (West Supp. 2017). The trial court also found that termination of Appellant's paternal rights to Mark was in Mark's best interest. *See id.* § 161.001(b)(2). This appeal followed.

## III. DISCUSSION

### A. Burden of Proof and Standards of Review

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West Supp. 2017); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (*citing Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence. *See* Tex. Fam. Code Ann. §§ 161.001(b), 161.206(a); *E.N.C.*, 384 S.W.3d at 802. Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious

than any property right.'"  *E.R.*, 385 S.W.3d at 555 (*quoting Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also E.N.C.*, 384 S.W.3d at 802.   Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent-child relationship, the Department must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001(b); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established—termination may not be based solely on the best interest of the child as determined by the trier of fact.  *Tex. Dep't of Human Servs. v. Markd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.—Fort Worth 2012, no pet.).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the Department proved the challenged ground for termination.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in the light most favorable to the finding and judgment.  *Id.*  We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so.  *Id.*  We disregard all evidence that a

7

reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses because that is the factfinder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

We are required to perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support the termination of a parent-child relationship. *In re A.B.,* 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the provisions of section 161.001(b)(1) and that termination of the parent-child relationship would be in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or

conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. Notice Regarding Appellant's Court-Ordered Services

In his second issue, Appellant argues that the Department failed to provide him with adequate notice that if he failed to complete his court-ordered services, the trial court could terminate his parental rights to Mark. Although Appellant does not use the terminology of due process, his argument on appeal is a due process complaint. *See In re M.A.P.*, No. 02-11-00484-CV, 2012 WL 2036457, at *19 (Tex. App.—Fort Worth June 7, 2012, no pet.) (mem. op.). We note that the record indicates that Appellant, along with counsel, was present at the termination trial when the mother's parental rights to Mark were terminated and Appellant's court-ordered services were pronounced; that the Department pleaded, in its petition seeking to terminate Appellant's paternal rights, that Appellant had failed to comply with his court-ordered services; that Appellant declined to attend the termination hearing regarding his parental rights to Mark; and that he was represented at that termination trial by counsel but never complained of a lack of notice to the trial court.

A parent waives any potential due process claim pertaining to court-ordered services when the parent fails to assert a violation of due process at trial. *See* Tex. R. App. P. 33.1(a)(1); *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003), *cert. denied*, 541 U.S. 1043 (2004); *In re U.P.*, 105 S.W.3d 222, 237 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g); *Swinney v. Mosher*, 830

9

S.W.2d 187, 196–97 (Tex. App.—Fort Worth 1992, writ denied). Appellant did not assert a due process violation or otherwise bring to the trial court's attention a lack of notice concerning his court-ordered services. Thus, Appellant has waived this argument for our review. *M.A.P.*, 2012 WL 2036457, at *19 ("[B]ecause Father did not assert a violation of substantive due process at trial, he waived that issue for appeal."). We therefore overrule Appellant's second issue.

Because only one finding under section 161.001(b)(1) is necessary to support a trial court's judgment of termination, and because Appellant has failed to preserve any argument regarding the trial court's finding that he failed to comply with his court-ordered services, we need not address his first and third issues regarding constructive abandonment or whether he has been convicted of an offense in which he is likely to be incarcerated for a period of two years or more. *See* Tex. Fam. Code Ann. § 161.001(b)(1); *see also Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (op. on reh'g).

## C.    Best-Interest Finding

In his fourth issue, Appellant argues that there is insufficient evidence to support the trial court's finding that it was in Mark's best interest that Appellant's paternal rights to Mark be terminated. We disagree.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d

239, 250 (Tex. 2013). The same evidence may be probative of both the subsection (1) ground and best interest. *Id.* at 249; *C.H.*, 89 S.W.3d at 28.

Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include the following: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

With regard to Mark's desires, the record reflects that Mark was approximately two years old at the time of Appellant's termination trial and that

Mark did not testify. Although, through counsel, Appellant expressed a desire to remain Mark's legal father, Newman testified that Appellant had only visited Mark once despite being given more opportunities to visit Mark. Newman also testified that Mark is bonded with his foster parents and his foster siblings and that Mark's foster parents are taking good care of Mark and meeting all his medical and developmental needs. *See In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent."); *Smith v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 682 (Tex. App.—Austin 2005, no pet.) (stating that best-interest focus is on the children, not the needs and desires of the parent). The trial court was entitled to find that this factor weighed in favor of terminating Appellant's parental rights to Mark.

With regard to Mark's emotional and physical needs now and in the future, although Mark initially had special needs when he was first placed in foster care, he no longer has those needs because his foster parents have provided the care necessary to bring Mark to an appropriate nutritional and developmental state. Nonetheless, Mark's basic needs include food, shelter, and clothing; routine medical and dental care; a safe, stimulating, and nurturing home environment; and friendships and recreational activities appropriate to his age. Newman testified that Appellant has not demonstrated an ability to provide a stable living

environment for Mark; that Appellant has not demonstrated an ability to maintain stable employment; that Appellant, despite knowing he was Mark's father, still chose to commit a new offense of DWI which resulted in him being jailed; and that Appellant is now incarcerated and serving a four-year sentence. The trial court was entitled to find that this factor weighed in favor of terminating Appellant's rights to Mark.

With regard to Appellant's parenting abilities, the record demonstrates that Appellant has a lengthy criminal record including charges for burglary, DWI repetition, and multiple drug offenses. Newman testified that despite being informed that he was Mark's biological father, Appellant nonetheless still chose to commit another DWI offense. Furthermore, Appellant is currently serving a four-year sentence for burglary and has failed to demonstrate that he can provide for Mark's financial, housing, and medical needs. In contrast, Newman testified that Mark's foster parents are providing him with proper food and shelter as well as proper medical care. Newman also said that the foster parents are providing Mark with a loving and nurturing home environment. The trial court was entitled to find that this factor weighed in favor of terminating Appellant's parental rights to Mark.

Regarding programs available to assist Appellant to promote the best interest of Mark, the record indicates that Appellant failed to complete most of his court-ordered services. The trial court was entitled to find that this factor weighed in favor of terminating Appellant's parental rights to Mark.

With regard to the plans for the children by the individuals seeking custody and the stability of the home or proposed placement, Appellant has not indicated the ability to provide a stable living environment for Mark, Appellant has not indicated the ability to provide financially for Mark, nor has Appellant indicated his ability to stay out of jail or prison. Furthermore, Appellant did not provide any evidence regarding any future plans he may have for Mark. In contrast, Newman testified that Mark was bonded with his foster family, that they had provided proper medical and developmental care for him, and that the Department was seeking termination in hopes that the foster family intended to adopt Mark. The trial court was entitled to find that this factor weighed in favor of terminating Appellant's parental rights to Mark.

As for any excuse for the acts or omissions of the parent, Appellant did not present any evidence at trial indicating why he had failed to complete his court-ordered services, he did not provide any evidence as to why he failed to visit Mark when he was given the opportunity, and he did not provide any evidence as to why he chose to commit another DWI after he learned of his paternity. Newman did testify that Appellant admitted to committing the DWI but that Appellant only expressed that there was nothing he could do about having already committed it. The trial court was entitled to find that this factor weighed in favor of terminating Appellant's parental rights to Mark.

Viewing all the evidence in the light most favorable to the best-interest finding and considering the nonexclusive *Holley* factors, we hold that the trial

court could have reasonably formed a firm conviction or belief that termination of the parent-child relationship between Appellant and Mark was in Mark's best interest, and we therefore hold the evidence legally sufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *Jordan v. Dossey*, 325 S.W.3d 700, 733 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding evidence legally sufficient to support best-interest finding when most of the best-interest factors weighed in favor of termination); *In re A.L.*, No. 08-17-00048, 2017 WL 3225030, at *6–8 (Tex. App.—El Paso July 31, 2017, no pet.) (holding evidence legally sufficient to support best-interest finding because child was bonded to foster parents, and mother demonstrated an inability to meet child's physical needs); *In re A.B.*, 412 S.W.3d 588, 602–07 (Tex. App.—Fort Worth 2013) (op. on reh'g) (holding evidence legally sufficient to support best-interest finding because father exhibited an inability to maintain a suitable home for children, father never displayed ability to change his behavior, children had improved while in foster care, and foster parents wanted to adopt children).

Similarly, reviewing all the evidence with appropriate deference to the factfinder, we hold that the trial court could have reasonably formed a firm conviction or belief that termination of the parent-child relationship between Appellant and Mark was in Mark's best interest, and we therefore hold that the evidence is factually sufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *A.L.*, 2017 WL 3225030, at *8 (holding evidence factually sufficient to support best-interest finding because

15

child did not have strong emotional attachment to mother); *A.B.*, 412 S.W.3d at 602–07 (holding evidence factually sufficient to support best-interest finding because father exhibited an inability to maintain a suitable home for children, father never displayed ability to change his behavior, children had improved while in foster care, and foster parents wanted to adopt children). We overrule Appellant's fourth issue.

## IV. CONCLUSION

Having held that Appellant waived his second issue and thus not needing to address his first and third issues, and having overruled his fourth issue, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: SUDDERTH, C.J.; MEIER and GABRIEL, JJ.

DELIVERED: January 4, 2018