**Affirmed and Memorandum Opinion filed May 26, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00271-CR

---

**BLAS TIERRABLANCA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Cause No. 91R-458**

---

## MEMORANDUM OPINION

Appellant Blas Tierrablanca appeals his conviction for murder. He was convicted by a jury, which then assessed his punishment at life in prison. In a single issue, appellant contends that the trial court abused its discretion in permitting the State to present a live, English translation of a recorded telephone conversation that occurred in Spanish. We affirm.

## *Background*

Appellant was charged with the 1991 murder of complainant Brenda Smith in Sealy, Texas. After complainant's death, appellant fled to Mexico where he remained for over twenty-six years before being extradited back to Texas. Upon his return to Texas, appellant confessed to causing complainant's death.

At the guilt-innocence phase of trial, testifying witnesses included the Sealy police officers and forensic and DNA analysts who investigated complainant's death, the assistant medical examiner who performed the autopsy of complainant, the Texas Ranger who interviewed appellant upon his return to Texas, two of appellant's friends from the time of the alleged crime, the girlfriend of one of those friends, and the manager of the motel where the crime allegedly occurred. A certified Spanish language interpreter was sworn in by the trial court to translate the proceedings for appellant. During trial, a written translation of portions of the ranger's interview with appellant was read for the jury in a question-and-answer format. A redacted recording of the interview itself was also admitted into evidence. Later, the State was permitted over defense objections to play a portion of a recorded Spanish language phone conversation between appellant and a friend while the interpreter translated the conversation for the jury. It is this presentation that appellant complains about on appeal.

The parties generally agree regarding much of what the evidence in the record established; appellant even acknowledges in his briefing that "the evidence was clear, Tierrablanca murdered Brenda Smith." In 1991, appellant met complainant in a bar in Sealy. Appellant agreed to pay complainant for sex, borrowed a friend's Camaro, and drove himself and complainant to a nearby motel. According to appellant, once they were in the motel room, complainant demanded more money than originally agreed. He said that he felt threatened that she wanted

to take the $2000 he was keeping in his wallet. Ultimately, appellant stabbed and cut complainant and slashed her neck with a knife. Complainant bled to death in the motel room. Appellant then fled in the Camaro and eventually made his way to Mexico, where he would remain for over twenty-six years.

Because appellant's sole complaint concerns the publication of the recorded telephone conversation to the jury, we will discuss the circumstances surrounding that conversation and publication in some detail. After the murder, Sealy Police Detective Joe Villareal learned about a potential witness, Diana Hernandez, who was a friend of appellant and his girlfriend. Hernandez permitted Villareal to listen on and record several conversations that she had with appellant over the phone. The State provided the recordings to defense counsel prior to trial. Hernandez and Villareal both testified during trial that the recording of one of the phone calls offered into evidence was a true and accurate copy of the conversation between Hernandez and appellant and was made on a device capable of making an accurate recording.

Before its admission into evidence, the subject of the recorded phone conversation was raised outside the jury's presence. Defense counsel noted that the recording apparently had been transcribed at some point but the transcription was never filed and no notice of its use was provided. The State explained that it would not be offering a transcript into evidence. When the State then offered the recording into evidence as State's exhibit 55 during Hernandez's testimony, appellant objected that she was not a proper witness to authenticate the recording because she did not own the device on which the recording was made. The State reminded the court that Villareal also had earlier testified as to the authenticity of the recording, and the trial court admitted exhibit 55 into evidence.

A portion of the recording was then played for the jury while the interpreter,

3

who had been sworn to provide a translation of the proceedings for appellant, provided a live, in-court translation of the conversation.[1] Before the recording was played, defense counsel objected that the State was improperly using extrinsic evidence to refresh the recollection of Hernandez, who was then on the witness stand. That objection was overruled.

When the recording first began playing, the interpreter stated, "I agree with the—" and "I concur," before the judge admonished him to provide live translation and not simply indicate whether he agreed with a written transcription. Defense counsel then renewed the extrinsic-evidence-to-refresh-recollection objection. The State explained that the recording was being offered as evidence in its own right and was not being used to refresh Hernandez's recollection of the conversation. The trial court again overruled the objection but permitted counsel a running objection on that ground.

As the recording began to play again, the interpreter asked the judge, "Read?" and the judge responded, "yes." The interpreter then said, "And that's why I don't want them to find out. Because if they find out, they could deport me or something. And I don't want that." Defense counsel objected that it appeared the interpreter was reading from a document and referring to notes that were not his. The judge observed that the interpreter had been instructed to translate the tape, and defense counsel thanked the judge.

As the recording began playing again, the interpreter said, "[I]t's not my problem. It makes no sense to be locked up over there for so many years, but . . . I

---

[1] We note that although the jury presumably would have been able to tell whether the words being translated were appellant's or Hernandez's because they could hear the voices on the recording, the record before us does not explicitly reflect whose words were being translated at any given time. Although some indication of the speaker can be gleaned from context, it is not necessary to resolution of the issues in this appeal.

know they can't prove anything. Even if they do arrest me. . . ." The trial judge then asked the State whether there would be any questions asked of the witness, and the State responded that they were publishing the recording of the phone call just as they had done with the recording of appellant's interview with the ranger. Defense counsel objected to the narrative nature of the presentation and that the witness was not being asked any questions. The judge overruled the objections.

When the recording began playing again, the interpreter stated, "I want to go back a little bit. One more time. I just can't say. It wasn't me. Proof? What proof is there? Just because they say it was me. They can't do that." The State then stopped the recording and asked Hernandez to clarify whose voice the jury was hearing on the recording, and she responded that it was appellant's voice. The State asked what they were talking about in terms of what appellant might be going to jail for, and Hernandez responded, "The murder." The State asked whether they had discussed whether appellant had told anyone else "what he had done," and Hernandez indicated appellant had spoken to his girlfriend at the time and the recording included that part of the conversation.

When the recording began to play again, the interpreter said, "She is scared of that, to go over there. Yeah. I know. She is very scared," The recording stopped and started again, and the interpreter said, "Yeah. And you, and you don't know why she got sick? Well, because of what you did, [appellant]. Yeah. I know." After one more stop and start, the interpreter said, "She asked me, and I said yes, that you told me that you did it. And she said that she already—." Defense counsel then objected on the ground of hearsay-within-hearsay, and the trial court sustained the objection. A discussion then ensued outside of the jury's presence regarding whether the statements constituted hearsay. At the conclusion of the discussion, the State opted to continue by simply asking Hernandez questions rather than playing

more of the recording. Hernandez then testified that appellant acknowledged that he had also told his girlfriend that he had killed the complainant. The State then passed the witness.

At the conclusion of the guilt-innocence phase, the jury found appellant guilty of murder. During the punishment phase, appellant testified regarding the events leading to complainant's death and his subsequent life in Mexico. The jury assessed appellant's punishment at life in prison.

### *Applicable Law*

In his sole issue, appellant contends that the trial court erred in its admission into evidence and publication to the jury of the phone call recording. Appellant further argues that this error ultimately influenced the jury's assessment of punishment, and he requests a new trial on punishment. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Relevant evidence is admissible except as otherwise provided by the United States and Texas constitutions, by statute, by the Texas Rules of Evidence, or by other rules enacted pursuant to statutory authority. Tex. R. Evid. 402.

To successfully complain of error on appeal, an appellant must have preserved any error in the trial court by making a timely and sufficiently specific motion, request, or objection and then pursued it to an adverse ruling. Tex. R. App. P. 33.1; *Musgrove v. State*, 425 S.W.3d 601, 607–08 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). An appellant must then file a brief that includes clear and concise argument in support of the complaint, with appropriate citations to relevant authority and the record. *See* Tex. R. App. P. 38. l(i); *Checo v. State*, 402 S.W.3d

6

440, 451 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The complaint of error on appeal must comport with the objection made at trial. *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

A recording in a foreign language is not inadmissible simply because it is in a foreign language. *Leal v. State*, 782 S.W.2d 844, 849 (Tex. Crim. App. 1989). Courts have typically analyzed the admissibility of a foreign language recording under either Rule of Evidence 1009, which governs translation of foreign language documents, or Code of Criminal Procedure article 38.03, which governs the use of interpreters in criminal proceedings, or both. Tex. Code Crim. Proc. art. 38.30; Tex. R. Evid. 1009; *see, e.g.*, *Leal*, 782 S.W.2d at 849–50 (analyzing admission of recording under article 38.03 before enactment of Rule 1009); *Castrejon v. State*, 428 S.W.3d 179, 183–84 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (analyzing admission under both article 38.30 and Rule 1009); *Peralta v. State*, 338 S.W.3d 598, 606 (Tex. App.—El Paso 2010, no pet.) (same). Under Rule 1009, a translation can either be done in writing under subsection (a) or through the testimony of a qualified translator under subsection (e). Tex. R. Evid. 1009(a), (e). Article 38.30 requires, among other things, that the interpreter be sworn to interpret. Tex. Code Crim. Proc. art. 38.30(a).

### *Discussion*

Most of appellant's briefing on appeal consists of a recitation of the events that transpired in the trial court. This format makes it somewhat difficult to understand what appellant is arguing on appeal. Nonetheless, we will endeavor to address all of appellant's trial and appellate complaints.

Appellant first notes that he objected at trial that the State failed to timely provide a transcription of the recording and written translation under Rule 1009(a). However, as appellant acknowledges in his brief, the State presented live

7

translation under Rule 1009(e), not a written translation under Rule 1009(a).

Appellant next asserts that the interpreter failed to provide a contemporaneous translation of the recording when it was published to the jury. He points out that when the recording first began playing, the interpreter stated, "I agree with the—" and "I concur," and immediately thereafter, the interpreter appeared to be reading something rather than simply translating what was being played on the recording. While the interpreter did initially appear to misunderstand his role in translating the recording and appellant made objections, the judge quickly corrected the interpreter and admonished him to provide live translation and not simply indicate whether he agreed with a written transcription. The translation continued thereafter in proper fashion. Indeed, defense counsel thanked the judge for his efforts and made no further objections or requests in this regard. Appellant also suggests that the translation was inaccurate but cites no support for this conclusory assertion beyond the translator's "I agree with the—" and "I concur" statements mentioned above, which appeared to be referencing a written translation that the interpreter was holding. Appellant suggests that the translator's remarks commented on the weight of the evidence, but they appear to have been no more than an indication of agreement with a written translation and not somehow a comment on anything said on the recording. Again, once corrected by the judge very early in the process, the translator began providing contemporaneous interpretation, and defense counsel did not complain further regarding the manner of interpretation. We discern no error in the interpreter's early struggles or the court's corrective measures. *See Castrejon*, 428 S.W.3d at 184 (explaining that a translation should be "accurate" but need not be "perfect"); *Peralta*, 338 S.W.3d at 604 (same).

Next, appellant suggests the trial court should have instructed members of

the jury that may speak Spanish not to engage in their own attempts to interpret the recording. Appellant, however, neither made such a request in the trial court nor cites any authority in support of such instruction on appeal. *See* Tex. R. App. P. 33.1, 38.1(i); *Musgrove*, 425 S.W.3d at 607–08; *Checo*, 402 S.W.3d at 451.

Appellant highlights the following passage from the translation as improperly admitted and harmful: "And that's why I don't want them to find out. Because if they find out, they could deport me or something. And I don't want that." Appellant asserts this statement was highly speculative regarding appellant's mental impressions and was offered without context or foundation. Appellant, however, did not object to this passage on any of these grounds in the trial court. *See Bekendam*, 441 S.W.3d at 300 (explaining that a complaint of error on appeal must comport with the objection made at trial).

Appellant notes that he objected to hearsay-within-hearsay at the end of the interpreter's testimony. *See generally Sanchez v. State*, 354 S.W.3d 476, 485–86 (Tex. Crim. App. 2011) ("When hearsay contains hearsay, the Rules of Evidence require that each part of the combined statements be within an exception to the hearsay rule."). Although appellant asserts error on appeal in relation to this objection, the trial court sustained the objection, defense counsel did not request an instruction to disregard or a mistrial, and the interpreter did not testify any further. Accordingly, nothing is preserved for our review. *See Musgrove*, 425 S.W.3d at 607–08.

Appellant also notes that he objected that the recording should have been used only to refresh the recollection of the witness, Hernandez. Appellant, however, neither cites any authority supporting the proposition that a foreign language recording or the translation of a foreign language recording can only be used in that manner nor makes a cogent argument in support of such contention.

*See* Tex. R. App. P. 38. l(i); *Checo*, 402 S.W.3d at 451. Appellant further notes that he objected to the narrative nature of the translation and the fact that the State was not asking questions while the recording was being played and interpreted. But again, appellant neither cites any authority requiring questioning while a recording is being translated nor makes any argument in support of such requirement. *See generally Leal*, 782 S.W.2d at 849–50; *Castrejon*, 428 S.W.3d at 183–84; *Peralta*, 338 S.W.3d at 606. Appellant also suggests that the State's grounds for offering the recording in response to his refresh-the-recollection objection misstated the law, likely confused the jury, and commented on the weight of the evidence. The State cited the "best evidence rule" in urging the admission of the recording and translation. However, regardless of whether the State's best-evidence argument supported admission, it was made outside of the jury's presence and thus could not have confused the jury or been a comment on the weight of the evidence. Moreover, appellant does not cite any authority supporting the proposition that a trial court errs in admitting evidence simply because the proponent's basis for offering the evidence was incorrect. *See Checo*, 402 S.W.3d at 451.

Finding no merit in any of appellant's arguments, we overrule his sole issue and affirm the trial court's judgment.

/s/      Frances Bourliot
Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).

10