FILED
11/05/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 18, 2021 Session

## IN RE CONSERVATORSHIP OF RUTH TOMLINSON OSBORN

**Appeal from the Chancery Court for Putnam County**
**No. 2015-39  Ronald Thurman, Chancellor**

_____

**No. M2020-01447-COA-R3-CV**

_____

Aristotle once explained that "it is possible to fail in many ways . . . while to succeed is possible only in one way[.]"[1] With some notable exceptions, in order for an issue to be proper on appeal, success depends on the following requirements: (1) that an issue be properly raised in the trial court; *and* (2) that the issue be properly raised on appeal. Of the three arguments Appellants presented in this appeal, none meets both of the above requirements, though they all fail in different respects. As a result, we affirm the decision of the trial court and award Appellee attorney's fees for defending against a frivolous appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY ARMSTRONG, JJ., joined.

Lynda W. Patterson, Livingston, Tennessee, for the appellants, Harlen Dixon and Grace Dixon.

Daniel H. Rader, IV, Cookeville, Tennessee, for the appellee, Kelly Tayes, Private Conservator, LLC.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

The particular issue in this case concerns the trial court's 2019 decision over the severance and sale of a piece of real property jointly owned by a ward and a pair of third-party relatives. This case began, however, more than four years earlier. This case originated

---

[1] Aristotle, *Nicomachean Ethics*, Book 2, § 8 (W. D. Ross trans., The Internet Classics Archive 1994–2000), *available at* http://classics.mit.edu/Aristotle/nicomachaen.2.ii.html.

on February 20, 2015, when the Tennessee Department of Human Services ("DHS") filed a complaint for authorization to consent to protective services for Ruth Tomlinson ("the Ward")[2] in the Putnam County Chancery Court ("the trial court"). DHS asked that the trial court enter an emergency temporary order designating Kelly Tayes, Private Conservator LLC to be responsible for the welfare of the Ward and to be permitted to consent to services on her behalf. The same day, Chancellor Ronald Thurman entered an order granting a temporary emergency order, appointing counsel for the Ward, and setting a hearing on DHS's complaint. On February 25, 2015, the trial court entered an order continuing the hearing and appointing a guardian ad litem for the Ward. Following a hearing involving stipulated medical testimony, on March 4, 2015, the trial court entered an order finding that the Ward was in need of protective services and appointing Kelly Tayes as the individual responsible for the Ward's welfare and for consenting to protective services.

On May 1, 2015, DHS filed a petition for the appointment of a conservator, under the same docket number as the emergency petition. The petition noted that one of the relatives of the Ward that was entitled to receive notice was Appellant Grace Dixon, the Ward's daughter. Attached to the petition was a medical examination report for the Ward that indicated the medical basis for the petition. On May 4, 2015, the trial court appointed a guardian ad litem for the Ward and set a hearing. On May 7, 2015, Ms. Dixon and her husband, Appellant Harlen Dixon (together, "Appellants"), by and through counsel, filed a motion for a continuance of the conservatorship hearing. On the same day, Appellants' counsel filed a notice of appearance on their behalf. On May 8, 2015, Kelly Morgan and Donnita Hill d/b/a Hill Realty ("Hill Realty") filed a motion to intervene for purposes of selling a piece of real estate under contract entered into by the Ward.

A hearing on the motion for the appointment of a conservator was held on May 8, 2015. On the same day, the trial court entered an order appointing Kelly Tayes as conservator for the Ward (hereinafter, "the Conservator").

On May 20, 2015, Hill Realty filed a motion to approve the sale of real estate located at 133 West High Street in Cookeville, Tennessee. The motion noted that the Ward had entered into a contract for the sale of the property in 2014, before this case was initiated.

On September 1, 2015, the trial court approved the Conservator's first annual property management plan and inventory. On September 2, 2015, the trial court entered an agreed order granting Hill Realty's motion to intervene and approving the sale of the High Street property. The order noted that the guardian ad litem had performed a full investigation on the proposed sale and found that while the price was below the tax

---

[2] The Ward is also listed in the record variously as Ruth Osborn Tomlinson, Ruth Tomlinson Osborn, Ruth Tomlinson, and Ruth Osborn. The parties both refer to the Ward by the last name Tomlinson throughout their briefs.

appraisal, the price was reasonable and in the Ward's best interest. Other than approval of annual accountings by the Conservator, the case was dormant for the next three years.

On May 11, 2018, the Conservator filed a motion to confirm a settlement between it and Appellants. According to the motion, the Conservator

> filed a third-party suit against [Appellants] relating to transfers of real property from the [W]ard to these individuals. This matter has been aggressively litigated, depositions taken, and motions filed. The parties have reached a settlement whereby [Appellants] will convey certain properties back to the ward, and make payments to the [W]ard.

Attached to the motion was a signed settlement agreement ("the Settlement Agreement") providing, in relevant part, as follows: (1) Appellants would transfer real property at 88 Quinland Lake Road and 1615 Louisiana Avenue in Cookeville, Tennessee to the Ward, care of the Conservator, or could "retain ownership of either o[r] both of these properties for their respective 2017 tax appraised values provided they provide notice of their election of this option and tender said payment within a reasonable time of the approval of this agreement"; (2) Appellants would pay $2,500.00 per month to the Ward, care of the Conservator, for the remainder of the Ward's life, for her care, treatment and support; and (3) Appellants and the Ward would continue to co-own property at 4840 Fox Knob Lane in Cookeville, Tennessee, which Mr. Dixon would manage as rental property and retain the rental proceeds therefrom.[3] The final provision, however, contained a caveat concerning the Fox Knob Lane property:

> However, if [the Ward] needs medical care, and there is no other viable option to pay for said care other than selling this property, the parties agree that they shall cooperate to sell said property, shall list it and shall agree to a reasonable sales price or an auction, at the written option of either party. Each party agrees that this provision may be specifically enforced and that a formal partition suit will not be necessary to enforce the terms of this contingency once it occurs.

The Conservator asked that the trial court grant it permission to enter into and consummate the settlement agreement. The motion was served on counsel for Appellants, who had previously filed a notice of appearance. On May 11, 2018, the trial court entered an order approving the settlement agreement and authorizing the Conservator to consummate the settlement. The order was signed by counsel for Appellants. Appellants filed a second notice of appearance on October 16, 2018.

---

[3] There is no dispute in this case that the property is held in a joint tenancy with rights of survivorship.

As is relevant to this appeal, on December 7, 2018, the Conservator filed a motion to sell both the Quinland Lake Road property and the jointly-owned Fox Knob Lane property. In the motion, the Conservator alleged that Appellants failed to pay their obligations under the Settlement Agreement and that the Ward lacked resources to continue home care. A hearing on the motion was set for December 21, 2018.

Appellants filed three motions on December 14, 2018. First, Appellants filed a motion to continue the hearing on the motion to sell real estate. The motion argued that the sale of the Fox Knob Lane property was not necessary and that further discovery needed "to be conducted to determine the nature and extent of the Conservator's efforts to obtain funds from other sources." Second, Appellants filed a motion to compel the visitation that had been agreed upon in the Settlement Agreement, "if the [c]ourt determines it has jurisdiction over the parties' Settlement Agreement." Finally, Appellants filed a motion to dismiss or transfer all motions regarding the parties' Settlement Agreement to the judge who had presided over that matter. According to this motion,

1. The parties were involved in collateral litigation, <u>Kelly Tayes Private Conservator LLC v. Harlen and Grace Dixon, et al</u>, Putnam County Chancery Court Case No. 2015 CV 77.
2. Your honor recused himself and the case was transferred to Judge Pemberton.
3. The parties ultimately settled the case. As part of that case, they entered into a Settlement Agreement that was approved by Judge Pemberton, after your honor approved it on behalf of the Ward, Dr. Ruth Osborn.
4. This Court does not have jurisdiction over Harlen and Grace Dixon in this proceeding. They have not been properly joined nor could they on these particular pleadings.

Thus, Appellants asked that the trial court either dismiss the Conservator's motion to sell the real property or, in the alternative, transfer the matter to Judge Pemberton.

On January 3, 2019, the trial court entered an agreed order entered into by both the Conservator and Appellants, by and through their counsel. The order provided that the parties agreed to sell the Quinland Lake Road property, that Appellants would pay the sum of $10,000.00 "toward the past due agreed settlement payments," and that the dispute over the sale of the Fox Knob Lane property would be reserved for hearing on January 25, 2019. The hearing over the sale of the property was later continued by agreement.

On June 11, 2019, Appellants filed a pre-trial memorandum on the issue of the sale of the Fox Knob Lane property. The pre-trial memo noted the separate action, which they asserted had resulted in a settlement "on terms very favorable to [Appellants]." Appellants further asserted that based on the provision in the Settlement Agreement for the sale of the Fox Knob Lane property if the Ward "had no other funds for medical treatment," the

Conservator had now asked to sell the jointly owned property. Appellants asserted that they had filed a motion to dismiss "based on lack of jurisdiction" while seeking to have their previously agreed-upon visitation enforced. The pre-trial memo further noted that Appellants were asserting both procedural and substantive objections to the sale. Procedurally, they asserted that because the Settlement Agreement "was approved by a different judge in a different case," that judge should hear any dispute concerning it, not the current judge who had previously recused. Appellants also asserted that they "are not properly before the court in this matter. They are only here as interested parties in the conservatorship. They have never been served with process on anything related to the settlement agreement or the conservatorship." Substantively, Appellants argued, inter alia, that the sale of the Fox Knob Lane property was not appropriate at that time because other property could be liquidated to pay the Ward's medical expenses.

A final hearing on the Conservator's motion to sell the Fox Knob Lane property occurred on June 18, 2019. Several witnesses testified, including the Conservator, a real estate agent, the Ward's daughter Joyce Parker, and Mr. Dixon. The trial court entered an order approving the severance of the joint tenancy and the sale of the Fox Knob Lane property on July 8, 2019. Therein, the trial court noted that Appellants argued that they "were not properly before the [c]ourt" and for a continuance. The trial court denied the continuance and noted that Appellants had entered into a Settlement Agreement providing for the sale of the property if necessary for the care of the Ward, which was not subject to relitigation.

The trial court further found that based on the testimony and proof presented, it was in the Ward's best interest to sever the joint tenancy and sell the Fox Knob Lane property in order to allow the Ward to remain in home care, rather than a nursing home. The trial court supported its ruling with detailed findings. Thus, the trial court ruled that the Conservator "may sell" the Fox Knob Lane property and was authorized to immediately unilaterally sever the survivorship interest. The trial court designated its ruling as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.[4]

Less than one month later, Appellants filed a motion to amend the trial court's judgment pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure. Relevant to this appeal, Appellants argued that they were never properly before the trial court because they "were never placed before the [c]ourt's jurisdiction" through the filing of a proper petition. In support, Appellants argued that Tennessee Code Annotated section 35-5-101

---

[4] Rule 54.02(1) provides, in relevant part, as follows:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

"*et. seq.*"[5] requires "at least some formal proceeding bringing the parties before the Court for the requested relief of a sale." According to Appellants, the trial court's ruling was "unprecedented" and "flies in the face of the most fundamental procedural requirements under the Rules of Civil Procedure and the Tennessee Code." As a result, Appellants argued that the trial court "lacked jurisdiction to proceed in this matter, yet did so anyway without requiring the Conservator to observe the most fundamental elements of civil procedure." As a result, Appellants asked that the trial court reverse its decision and "require the Conservator to follow the Rules of Civil Procedure and satisfy the law's requirements to sell a third party's interest in real property." Appellants also raised arguments concerning the trial court's denial of their oral motion for a continuance and the trial court's substantive finding that sale of the Fox Knob Lane property was necessary, legally sound, and in the Ward's best interest. Finally, Appellants took issue with the propriety of the trial court's written order.

The trial court did not resolve Appellants' motion to alter of amend for some time. On November 1, 2019, the Ward passed away. The conservatorship was thereafter wound up and closed by order of September 23, 2020. In this order, the trial court also denied Appellants' pending motion to alter or amend as not well-taken. Appellants thereafter filed a timely notice of appeal to this Court on October 16, 2020.

## II. ISSUES PRESENTED

Appellants raise three issues in this appeal, which are taken, and slightly restated, from their brief:

1. Whether the Due Process rights of Appellants were violated by the trial court's decision to sever the survivorship interest and order the sale of property owned jointly by them and the Conservator and by the trial court's dismissal of the Appellants' Rule 59.04 Motion based upon same.

2. Whether the procedural due process rights of the Appellants were violated by the decision of the trial court.

3. Whether the trial court erred in hearing the case after the Judge on his own motion recused himself.

In the posture of appellee, the Conservator also seeks an award of attorney's fees incurred on appeal.

## III. STANDARD OF REVIEW

---

[5] Section 35-5-101 contains requirements applicable to "any sale of land to foreclose a deed of trust, mortgage or other lien securing the payment of money or other thing of value or under judicial orders or process[.]" Tenn. Code Ann. § 35-5-101(a), (e).

We review the trial court's findings of fact following a bench trial "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's legal conclusions, however, are reviewed de novo with no presumption of correctness. **Estate of Haire v. Webster**, 570 S.W.3d 683, 690 (Tenn. 2019). To the extent that Appellants assert that the trial court erred in denying their motion to alter or amend, we review the trial court's decision for an abuse of discretion. **Harmon v. Hickman Cmty. Healthcare Servs., Inc.**, 594 S.W.3d 297, 305 (Tenn. 2020).

## IV. DISCUSSION

### A.

The first two issues raised by Appellants both concern alleged violations of their due process rights. This issue was properly designated as an issue on appeal. It was also argued in the body of Appellants' brief. **Childress v. Union Realty Co.**, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("We consider an issue waived where it is argued in the brief but not designated as an issue. Similarly, when a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived.").

Whether it was *sufficiently* argued on appeal, however, is in question. For example, while Appellants cite authority for the proposition that a property interest gives rise to a due process right, they cite no authority to suggest that they have any present protected property interest in the joint tenancy that gives rise to due process protections. *See* **Sneed v. Bd. of Prof'l Responsibility of Supreme Court**, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). Tennessee caselaw actually suggests the opposite. As the Tennessee Supreme Court explained, "[t]o be entitled to procedural due process protection, a property interest must be . . . a 'legitimate claim of entitlement' to a specific benefit . . . [that] cannot be removed except 'for cause.'" **Keller v. Casteel**, 602 S.W.3d 351, 358 (Tenn. 2020) (quoting **Tenn. Dep't of Corr. v. Pressley**, 528 S.W.3d 506, 513–14 (Tenn. 2017). But a joint tenancy can be severed "unilaterally" by one party "at his will"—that is, entirely without cause. *See* **Bryant v. Bryant**, 522 S.W.3d 392, 411 (Tenn. 2017) ("We join the majority of jurisdictions in following the common-law doctrine of severance and hold that a joint tenancy with an express right of survivorship may be severed and the estate thereby turned into a tenancy in common, by any one of the joint owners, at his will.") (citation and quotation marks omitted); *cf.* **Harney v. Meadowbrook Nursing Ctr.**, 784 S.W.2d 921, 922 (Tenn. 1990) (noting, in the employment context, that "at will" means that an employee may be discharged for "good cause, bad cause or no cause at all"). And even assuming that there was some recognized property interest to protect in this case, Appellants have not

- 7 -

cited any law to suggest that they were deprived of all the process that was due under the circumstances, given that they were provided actual notice of the Conservator's intent to sell and fully participated in the proceedings to sell the real property at issue. *See **Keisling v. Keisling***, 92 S.W.3d 374, 377 (Tenn. 2002) (quoting ***State v. Pearson***, 858 S.W.2d 879, 884 (Tenn. 1993)) ("Basic due process requires 'notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"). Still, setting aside the sufficiency of Appellants' argument, there is no question that Appellants' brief at least minimally raised this issue as a proper issue for appellate relief.

The most significant problem that befalls Appellants' due process argument is not how it was addressed on appeal, but how it was raised in the trial court. Simply put, this argument was not raised in the trial court. Here, Appellants filed several papers in response to the Conservators' motion to sell the jointly-owned property, including a motion to continue, a motion to dismiss, multiple agreed orders, a pre-trial brief, and a motion to alter or amend the judgment ordering the sale of the property. None of these filings ever mentioned any due process protections or the alleged lack thereof. To be sure, Appellants did argue on multiple occasions that they were "not before" the trial court because no formal petition had been filed nor had service of process been issued and served. But Appellants never framed this issue as a lack of due process.

As Appellants' first issue explicitly asserts that the trial court violated their due process rights by denying their motion to alter or amend, we find this motion particularly instructive on this question. This pleading is where Appellants best elucidate their objection that they were "not before" the trial court. In particular, Appellants cite, for the first time, Tennessee rules and statutes that they argue do not countenance the trial court's decision to sever the joint tenancy in the absence of a formally filed pleading.[6] No constitutional issues, however, are mentioned, even in passing. Thus, even if this question could be raised for the first time in a post-trial motion, Appellants simply did not do so. *But see **In re M.L.D.***, 182 S.W.3d at 895 ("A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments."). Instead, the very first time that due process was even mentioned by Appellants was in their brief to this Court.

Arguments that implicate due process, like most other arguments, may be waived when they are raised for the first time on appeal. *See **Inzunza v. State***, No. M2011-02641-CCA-R3-PC, 2013 WL 57878, at *3 (Tenn. Crim. App. Jan. 7, 2013) ("We also agree with the State that the petitioner has waived consideration of her claim that due process considerations should operate to toll the statute of limitations because she failed to raise

---

[6] Neither Appellants' motion to dismiss nor their pre-trial brief cites a single case, statute, rule, or constitutional provision to support the argument that they are "not properly before the [trial] court in this matter." Appellants' motion to alter or amend barely corrects this deficiency, citing only generally to Tennessee Code Annotated section 35-5-101 "*et seq.*" and "Rules of Civil Procedure and the Tennessee Code."

the issue in her petition or before the post-conviction court."); ***Seales v. State***, No. M2011-01151-CCA-R3-PC, 2012 WL 2873381, at *3 (Tenn. Crim. App. July 13, 2012) (concluding that petitioner's claim that due process considerations should toll the statute of limitations was waived because petitioner presented the issue for the first time on appeal); ***Diotis v. State***, No. W2011-00816-CCA-R3-PC, 2011 WL 5829580, at *2 (Tenn. Crim. App. Nov. 17, 2011) ("We need not tarry long over the petitioner's claim of due process tolling because he has presented the claim for the first time on appeal."). Here, Appellants had every opportunity to argue that they were being deprived of a property interest in violation of due process in the trial court. They failed to do so in any fashion. Because this argument cannot be raised for the first time on appeal, it is waived.

**B.**

In the argument section of their brief relevant to their second issue on appeal, Appellants also argue that the trial court lacked personal jurisdiction over them. Unfortunately for Appellants, this argument succumbs to the opposite problem. It is true that Appellants argued, at least minimally, in the trial court that it lacked personal jurisdiction over them because no formal petition had ever been filed and they had never been served with process.[7] The trial court rejected this argument, citing the Settlement Agreement in which Appellants agreed to sell the subject property should it become necessary and the agreed order entered into by the parties.[8] In the body of their brief, Appellants again raise the issue of personal jurisdiction, arguing that they never agreed to subject themselves to the jurisdiction of the trial court and that they therefore never waived their objection to personal jurisdiction. The Conservator argues that Appellants' personal jurisdiction argument substantively lacks merit, as Appellants consented to the jurisdiction of the court on several occasions, including by entering into a consent order that specifically addressed certain obligations under the Settlement Agreement. We conclude, however, that it is not necessary to address the issue of personal jurisdiction as this issue was not designated as an issue on appeal.

Rule 27 of the Tennessee Rules of Appellate Procedure specifically provides that appellants' briefs to this Court "shall contain . . . [a] statement of the issues presented for review." Tenn. R. App. P. 27(a)(4). Subject to some exceptions not present here, "[r]eview generally will extend only to those issues presented for review." Tenn. R. App. P. 13(b). It is therefore well-settled that an issue is generally waived when it is argued in the body of the brief, but not designated as an issue on appeal. *See, e.g.*, ***State v. Freeman***, 402 S.W.3d

---

[7] Again, the first time that Appellants ever cited legal support of any kind for their argument was in their post-trial motion.

[8] We note that the Settlement Agreement entered into between the Conservator and Appellants specifically states that no formal partition suit will be necessary to enforce the provision allowing the sale of the Fox Knob Lane property to pay the Ward's expenses. Neither party mentions this provision in their appellate briefs.

643, 653 (Tenn. Ct. App. Oct. 16, 2012) ("Generally, an issue argued in the body of the brief, but not designated as an issue will be considered waived"); ***Bunch v. Bunch***, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008); ***Childress v. Union Realty Co.***, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002).

The Tennessee Supreme Court has opined on the specificity required of the designated issues:

> [A] properly framed issue may be the most important part of an appellate brief. Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* 83 (2008); David E. Sorkin, *Make Issue Statements Work for You*, 83 Ill. B.J. 39, 39 (Jan. 1995).
>
> Rather than searching for hidden questions, appellate courts prefer to know immediately what questions they are supposed to answer. Bryan A. Garner, *Garner on Language and Writing* 115 (2009); Robert L. Stern, *Appellate Practice in the United States* § 10.9, at 263 (2d ed.1989). Accordingly, "[a]n effectively crafted issue statement will define the question to be considered and begin disposing the court to decide in the client's favor." Judith D. Fischer, *Got Issues? An Empirical Study About Framing Them*, 6 J. Ass'n Legal Writing Directors 1, 25 (2009); *see also* ***State v. Williams***, 914 S.W.2d 940, 948 (Tenn. Crim. App. 1995) (stating that "[e]ach issue should . . . relate the conclusion that the party wants the appellate court to reach"); Karl N. Llewellyn, *A Lecture on Appellate Advocacy*, 29 U. Chi. L. Rev. 627, 630 (1962) (stating that "the  first thing that comes up is the issue and the first art is the framing of the issue so that if your framing is accepted the case comes out your way").
>
> Appellate review is generally limited to the issues that have been presented for review. Tenn. R. App. P. 13(b); ***State v. Bledsoe***, 226 S.W.3d 349, 353 (Tenn. 2007). Accordingly, the Advisory Commission on the Rules of Practice and Procedure has emphasized that briefs should "be oriented toward a statement of the issues presented in a case and the arguments in support thereof." Tenn. R. App. P. 27, advisory comm'n cmt. . . .  The issues should be framed as specifically as the nature of the error will permit in order to avoid any potential risk of waiver. ***Fahey v. Eldridge***, 46 S.W.3d 138, 143-44 (Tenn. 2001); ***State v. Williams***, 914 S.W.2d at 948.

***Hodge v. Craig***, 382 S.W.3d 325, 335 (Tenn. 2012). Thus,

> "Parties should refrain from incorporating several separate and distinct errors into a single issue." ***Williams***, 914 S.W.2d at 948–49 (finding an issue waived because it was "too broad in scope" and "vague and conclusory in nature"). Instead, "[a] separate issue should be presented for each error raised in the appellate court." *Id.* at 948 (citing ***Leeson v. Chernau***, 734 S.W.2d

634, 637 (Tenn. Ct. App. 1987)). The Rules of Appellate Procedure "'do[ ] not contemplate that an appellant may submit one blanket issue as to the correctness of the judgment and thereby open the door to argument upon various issues which might affect the correctness of the judgment.'" *Id.* at 948 n.5 (quoting *Leeson,* 734 S.W.2d at 637).

*Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596, 614 (Tenn. Ct. App. 2015).

As previously noted, Appellants raised three issues in this case. None of Appellants' issues speak of personal jurisdiction in any manner. Instead, Appellants' first two issues speak of whether Appellants' due process rights were violated, while Appellants' third issue concerns itself with recusal. Thus, nothing in any of the issues raised by Appellants' gives this Court any indication that personal jurisdiction was at issue in this appeal.

While undeniably related, the concepts of due process and personal jurisdiction are distinct. *Cf.* Robert E. Pfeffer, *A 21ˢᵗ Century Approach to Personal Jurisdiction*, 13 U.N.H.L. Rev. 65, 145 (2015) ("[T]he two concept personal jurisdiction and due process—involve two separate concerns, rather than being separate flavors of the same concept[.]"). For example, actual notice may be sufficient to meet minimum due process requirements depending on the circumstances, but it is not sufficient to create personal jurisdiction in the absence of service of process. *Compare Turner v. Turner*, 473 S.W.3d 257, 271 (Tenn. 2015) ("A court obtains personal jurisdiction over a party defendant by service of process. The record must establish that the plaintiff complied with the requisite procedural rules, and the fact that the defendant had actual knowledge of attempted service does not render the service effectual if the plaintiff did not serve process in accordance with the rules."), *with State v. Verner*, No. M2014-02339-CCA-R3-CD, 2016 WL 3192819, at *8 (Tenn. Crim. App. May 31, 2016) ("We conclude that the defendant had actual notice that the trial court would be considering the particular term involved in the violation and that this notice was sufficient to comport with due process."); *Warmath v. Payne*, 3 S.W.3d 487, 492 (Tenn. Ct. App. 1999) (holding that due process is satisfied when a property owner receives "actual notice" of the proceeding that affects his interest in property). Thus, Appellants' reference to due process in their statement of the issues does not provide proper notice that personal jurisdiction—and in particular Appellants' arguments concerning the filing of a formal petition and service of process thereon—are also at issue in this appeal.

Like due process, the law is also clear that issues of personal jurisdiction are among the types of issues that may be waived. *See, e.g.*, *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994) ("[A] a court's lack of personal jurisdiction may be waived by a defendant[.]"). Indeed, this Court has stated that a waiver may occur even after the issue was raised in the trial court. *See Woodruff v. Anastasia Int'l, Inc.*, No. E2007-00874-COA-R3-CV, 2007 WL 4439677, at *3 (Tenn. Ct. App. Dec. 19, 2007) (holding that "even

after raising certain defenses, a party still may be found to have waived those defenses under certain instances"); *see also* **Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC**, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at \*7 (Tenn. Ct. App. Aug. 6, 2018) (quoting **Brokerwood Prods. Int'l, Inc. v. Cuisine Crotone, Inc.**, 104 Fed. App'x 376, 379–80 (5th Cir. 2004)) (holding that lack of personal jurisdiction may be waived "by failing to pursue the defense")). We therefore discern no bar to applying the general rule waiving arguments that are not properly designated as issues for review to questions of personal jurisdiction. Consequently, we conclude that Appellants' argument that the trial court lacked personal jurisdiction over them is waived.

## C.

Appellants raise a final issue: that the trial court judge should have recused himself from hearing this case. Rule 10B of the Tennessee Supreme Court Rules provides specific guidelines for how recusal issues are to be raised in the trial court. Pursuant to Rule 10B, a litigant is entitled to seek disqualification of a trial judge by filing a motion that: (1) is supported by an affidavit under oath or a declaration under penalty of perjury by personal knowledge or by other appropriate materials; (2) states, with specificity, all factual and legal grounds supporting disqualification of the judge; and (3) affirmatively states that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Tenn. Sup. Ct. R. 10B, § 1.01.

Upon filing of such motion, "the judge whose recusal is sought shall either grant or deny the motion in writing." **Watson v. City of Jackson**, 448 S.W.3d 919, 927 (Tenn. Ct. App. 2014). If the motion is denied, the judge shall state in writing the grounds for the denial. Tenn. Sup. Ct. R. 10B, § 1.03. Additionally, if the motion is denied, the movant may file an accelerated interlocutory appeal of the denial. Tenn. Sup. Ct. R. 10B, § 2.02.

Here, Appellants assert in their brief that the trial judge erred in hearing this case when he had previously recused from the separate case between the Conservator and Appellants. Appellants assert that while the order of recusal "did not specifically state the [j]udge's basis for his recusal, the implication, nonetheless, was that at the very least his impartiality could be called into to question." Although there are a number of issues with Appellants' argument,[9] the issue that is fatal to this appeal is that Appellants did not file any motion in the trial court for recusal of the trial judge.

As discussed above, Rule 10B requires that the party seeking recusal of the judge

---

[9] Other issues include the recusal order from the separate case that Appellants rely upon in this appeal being absent from the record and Appellants' reliance on nothing more than assumptions and innuendo that the conflict that required recusal in the separate case was also present in this case. *See generally* **Garner v. Garner**, No. W2016-01213-COA-T10B-CV, 2016 WL 4249479, at \*4 (Tenn. Ct. App. Aug. 10, 2016) ("A claim of bias or prejudice must be based on facts, not speculation or innuendo.").

"shall" file a written motion, which "shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge[.]" Tenn. Sup. Ct. R. 10B, § 1.01. This Court has held that "it is imperative that litigants file their petitions for recusal appeal in compliance with the mandatory requirements of Rule 10B in the first instance[.]" *Elliott v. Elliott*, No. E2012-02448-COA-10B-CV, 2012 WL 5990268, at *3 (Tenn. Ct. App. Nov. 30, 2012). Rule 10B therefore "makes the affidavit in support of the motion for recusal mandatory." *Smith v. Smith*, No. E2017-01295-COA-R3-CV, 2019 WL 410702, at *3 (Tenn. Ct. App. Jan. 31, 2019) (alterations omitted) (citing *Elliott*, 2012 WL 5990268, at *4 ("The record provided by the appellant also does not include any affidavit in support of the motion for recusal . . . , which Rule 10B makes mandatory.")). In similar circumstances where no recusal motion was filed in the trial court, we have often refused to entertain a recusal argument on appeal. *See, e.g.*, *Smith*, 2019 WL 410702, at *4; *Lofton v. Lofton*, 345 S.W.3d 913, 917 (Tenn. Ct. App. 2008) ("Because Mr. Lofton did not file a motion for recusal, we would usually hold that he has waived such right in conjunction with the hearings before the trial court.");[10] *Wright v. Pate*, 117 S.W.3d 774, 777 (Tenn. Ct. App. 2002) ("Because Appellant has filed no motion for recusal, we must hold that Appellant has waived such right in conjunction with the January 30, 2002 hearing and subsequent Order filed February 13, 2002."). This rule is true even where the litigant mentioned the issue of the trial court's alleged bias in another pleading, but not in compliance with Rule 10B. *See Smith*, 2019 WL 410702, at *3 n.3 ("Ms. Smith asserts that this issue was presented in the trial court via her motion to alter or amend. Respectfully, a single assertion that the trial court 'demonstrate[d] bias against the rule of law' without any accompanying request for recusal of the trial judge or proper motion to recuse supported by an affidavit as required by Rule 10B is not sufficient to preserve this issue for appellate review.").

Here, Appellants did indicate in the trial court that the judge who presided over the separate case should hear the case-at-bar in both their motion to dismiss and their pre-trial brief. Neither of these filings, however, in any way asserted that there was an impermissible bias or an appearance of impropriety. While these filings noted the trial judge's prior recusal in the separate matter, neither actually requested that the judge recuse himself from this particular case; the most that these motions asked for was for the matter to be transferred to the other judge. Thus, the filings in this case implicate recusal even less than those held insufficient in *Smith*. 2019 WL 410702, at *3 n.3.

But even assuming, arguendo, that these filings were enough to raise the issue of recusal, Appellant never filed any affidavit in the trial court in support of any ostensible

---

[10] In *Lofton*, we held that recusal may still be warranted in such a case where the bias was "egregious." *Id.* at 917 ("[E]ven in the absence of a motion to recuse, if the apparent bias of a trial court is sufficiently egregious, then it may, nonetheless, require sua sponte recusal or, at least, transfer to another judge upon remand."). No such allegations are at issue in this case and the record does not present evidence of an egregious bias. Indeed, Appellants have failed to state any factual basis for the recusal other than speculation that the prior recusal may possibly have implications for the case-at-bar.

- 13 -

effort to recuse the trial judge. We have previously held that this failure can be fatal to a recusal appeal. *See Childress v. United Parcel Serv. Inc.*, No. W2016-00688-COA-T10B-CV, 2016 WL 3226316, at *3 (Tenn. Ct. App. June 3, 2016) (declining to consider an accelerated interlocutory recusal appeal where the written recusal motion was not accompanied by the required affidavit); *In re Am. Bonding Co.*, No. M2014-00249-CCA-R3-CD, 2015 WL 832513, at *6 (Tenn. Crim. App. Feb. 26, 2015) (holding that the litigant "waived consideration of the entire recusal issue based on his failure to follow the procedural requirements of a motion to recuse" because the motion was not accompanied by an affidavit). The lack of affidavit is particularly egregious in this case because there was nothing in the technical record to support Appellants' allegations of bias.[11]

In sum, Appellants filed no motion seeking recusal of the trial judge and to the extent that such a request can even be read from Appellants' filings, they did not comply with the mandatory requirement that their motion be accompanied by an affidavit or declaration under Rule 10B. As a result, Appellants have also waived the third issue they raised in this appeal.

**D.**

Finally, the Conservator asks for an award of attorney's fees under Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. *Robinson v. Currey*, 153 S.W.3d 32, 42 (Tenn. Ct. App. 2004). This issue was properly designated as an issue and argued in the Conservator's brief. Because Appellants have waived every issue they presented in this appeal, we agree that this appeal was frivolous. As a result, we grant the Conservator's request and remand to the trial court for the determination of the reasonable attorney's fees that the Conservator incurred in defending this appeal.

---

[11] Indeed, even when the trial judge's recusal was discussed in the hearing on the underlying dispute, no proof was presented as to the basis of the trial judge's prior recusal, which the trial judge frankly admitted he had no memory of. Instead, there were only statements of counsel as to what the attorney's "personal perception" of the basis for the recusal was in that case. But statements of counsel are not evidence. *Hathaway v. Hathaway*, 98 S.W.3d 675, 681 (Tenn. Ct. App. 2002). And while the prior recusal was discussed at the hearing, it is important to note that no oral request for the trial judge to recuse from this case was lodged during that hearing, to the extent that such an oral motion would even be sufficient to raise this issue. *See generally* Tenn. Sup. Ct. R. 10B, § 1.01 (requiring a written motion).

- 14 -

### V. Conclusion

The judgment of the Putnam County Chancery Court is affirmed and this cause is remanded for the determination of the Conservator's reasonable attorney's fees incurred in defending against this appeal and for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellants Grace and Harlen Dixon, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE